**Howard C. BREEDING, Plaintiff Below, Appellant,**

v.

**CONTRACTORS–ONE–INC., Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 7, 1988.
Decided: Nov. 3, 1988.
Rehearing Denied Nov. 9, 1988.

Harvey Bernard Rubenstein, Wilmington, for plaintiff below, appellant.

Colin M. Shalk, of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant below, appellee.

Before HORSEY, WALSH and HOLLAND, JJ.

HORSEY, Justice:

In this workmen's compensation dispute we are required once again to review the Industrial Accident Board's application of the displaced worker doctrine as well as Superior Court's performance of its appellate function in reviewing rulings of the

Board. The appeal raises three issues: one, whether the Board's finding of no causal connection between the employee's right hip and leg complaints and his 1984 industrial accident may be sustained; two, whether the Board properly applied the law of displaced worker in finding that the employee's partial disability in his right shoulder and arm did not render him totally disabled; and three, whether Superior Court properly carried out its review function in affirming the Board's result but on different reasoning based on independent findings not made by the Board. We affirm as to the first issue but reverse as to issues two and three.

Plaintiff, Howard C. Breeding, appeals from two decisions of the Superior Court dated May 13, 1988 and January 7, 1987 and two decisions of the Industrial Accident Board dated September 23, 1985 and October 8, 1987. In Breeding's first appeal to Superior Court of the Board's 1985 ruling, Superior Court affirmed the Board on its disability rulings, but held that the Board had wrongfully deprived Breeding of the right to be heard on the attorney fee issue and remanded the case to the Board. Both parties appealed, but this Court dismissed the appeal as interlocutory. *Breeding v. Contractors–One–Inc.*, Del.Supr., 527 A.2d 281, No. 17, 1987, Horsey, J. (June 1, 1987) (Order). On remand, the Board increased claimant's attorney fee on the permanency issue to the statutory maximum.

### I.

In January 1984, Breeding, an ironworker employed by defendant Contractors–One–Inc. ("employer"), fell 12 to 15 feet onto a concrete floor, landing on his knees with another worker on top of him. Though he suffered various injuries, the most evident of which was pain in the right shoulder, Breeding returned to work the day after the accident but was temporarily assigned to light duty. X-rays taken on the day of the accident suggested a hairline fracture of the right arm, a finding confirmed by follow-up x-rays the next week. After the job was completed, Breeding was laid off. Breeding has not worked since.

In early February 1984, Breeding and his employer's compensation carrier entered into an agreement providing Breeding with total disability benefits. The agreement referred only to an injury to Breeding's right shoulder. From January to June 1984, Breeding was examined by at least four doctors. Breeding also underwent treatment by a physical therapist for ten weeks, until discontinued in November 1984. Through June 1984, Breeding did not complain to any of the health care providers of pain in his right hip or leg.

Dr. Ivan Barsky testified for the employer by deposition before the Board. In June 1984, Dr. Barsky examined Breeding after Breeding had been discharged by an orthopedic surgeon, Dr. Casscells. Breeding's sole complaint to Dr. Barsky was about pain in his right arm. Breeding's shoulder fracture had not yet fully healed. In February 1985, after Breeding had been without medical treatment for several months, Breeding's employer arranged for Dr. Barsky to re-examine Breeding and later petitioned the Board to terminate Breeding's total disability benefits. Breeding contested the petition and also filed a petition for permanent partial disability benefits for both his right arm and his right hip and leg.

When Breeding was re-examined by Dr. Barsky, Breeding complained for the first time to Barsky of pain in his right hip and leg. He also felt continuing pain in his right shoulder. Dr. Barsky found that the shoulder fracture had healed but that Breeding had a slight limitation in the use of his right arm. However, Dr. Barsky attributed this limitation to a pre-existing condition of peritendinitis and not to Breeding's industrial accident. Dr. Barsky opined, based on reasonable medical certainty, that Breeding's industrial accident had not placed any limitations upon his physical ability to work. Dr. Barsky made no investigation or findings with respect to Breeding's right hip and leg.

In July 1985, Breeding was examined by Dr. A.J. Fink, a neurologist. Dr. Fink, testifying for the plaintiff before the

Board, stated that Breeding informed him of pain in both his right shoulder and his right leg. Based on his first examination, Dr. Fink found it difficult to connect Breeding's hip and leg complaints to the 1984 industrial accident, but concluded that such a causal connection was a "possibility." However, three weeks later, Dr. Fink, after re-examining Breeding and reviewing a July 1985 EMG confirming "radiculopathy at L–5,S–1," concluded that Breeding's hip and foot problems arose out of the January 1984 accident. Dr. Fink also found Breeding to have a soft tissue injury in the shoulder area, which left Breeding with a ten percent permanent injury to his right shoulder. With respect to Breeding's leg and hip injury, Dr. Fink testified with reasonable medical probability that Breeding had a five percent permanent injury to his hip and a five percent permanent injury to his foot. "Based on the history related by [Breeding]" and the EMG results, Dr. Fink opined that Breeding's disabilities were caused by his industrial accident.

At the hearing before the Board, Breeding conceded that for six months following the 1984 accident he had failed to disclose to any of his health care providers his hip and leg complaints. Nevertheless, Breeding's wife testified that he had complained to her immediately after his fall of pain in his right leg and hip and continued thereafter to do so. Breeding's co-worker, who had fallen on top of him, also testified that Breeding had complained after the accident of his "right side" hurting.

By order dated September 23, 1985, the Board: granted Breeding permanent partial disability benefits related to his right arm; denied permanency benefits related to Breeding's right hip and leg; awarded Breeding certain attorney fees; and terminated Breeding's total disability benefits. The Board based the latter ruling on dual findings that Breeding had: (i) failed to meet his burden of proffering evidence showing himself to be *prima facie* a displaced worker; and (ii) failed to meet his consequent burden of showing that he had made reasonable efforts to secure suitable employment that were unsuccessful due to his injury. Breeding now appeals Superior Court's May 13, 1988 ruling and order affirming under application of the law of the case doctrine its September 1985 decision.

## II.

The first issue presented is whether the Board's finding that Breeding's right hip and leg problems were not causally related to his fall is supported by substantial evidence. If such evidence exists and the Board made no error of law, its decision must be affirmed. 29 *Del.C.* § 10142(d). *A. Mazzetti & Sons, Inc. v. Ruffin*, Del. Supr., 437 A.2d 1120 (1981); *M.A. Hartnett, Inc. v. Coleman*, Del.Supr., 226 A.2d 910 (1967). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is also defined as more than a scintilla but less than a preponderance of the evidence. *DiFilippo v. Beck*, D.Del., 567 F.Supp. 110 (1983). In rejecting Breeding's hip and leg claim of permanency, the Board ultimately ruled:

The Board declines to make any award to the claimant for permanent and partial impairment to his right hip or right foot. The evidence indicates that the claimant did not report to any doctor the existence of hip, leg or foot pain until approximately six months after his accident in January, 1984. The Board finds that any injury to the hip, leg or foot is not the result of the accident in January, 1984.

Breeding contends that the Board's ruling must be rejected because it is in disregard of, and contrary to, the "specific medical testimony of causation of Dr. Fink upon that issue." We disagree for several reasons. When an expert's opinion of causality is based in large part upon the patient's recital of subjective complaints and the trier of fact finds the underlying facts to be different, the trier is free to reject the expert's conclusion. *Cf. Sears, Roebuck and Company v. Farley*, Del.Supr., 290 A.2d 639 (1972). In the course of its lengthy decision, the Board had noted that Dr. Fink had "changed his opinion" from a "possibility" of a causal connection between hip and leg complaints and the industrial accident to an unqual-

ified opinion. The Board was also clearly troubled by Breeding's credibility.

> He did not tell Dr. Barsky in June of 1984 of his leg pain. He thinks that he told Dr. Fink that his pain became aggravated in the warmer weather. He cannot remember if he told Dr. Newman that the pain begin in July, 1984. From January, 1984 until October, 1984 he saw many doctors. He did not complain of leg and hip pain.

Given the extent of conflicting testimony, the Superior Court correctly ruled that the "Board [as fact finder] could logically infer that claimant's leg and hip problems were not causally related to the accident." *Whaley v. Shellady, Inc.*, Del.Supr., 161 A.2d 422, 424 (1960). Therefore, we affirm as to the first issue.

### III.

As to the displaced worker issue, Breeding asserts that the evidence was insufficient to sustain the Board's findings: (i) that Breeding failed to establish that he was a *prima facie* displaced worker; and (ii) that Breeding also failed to meet his consequent burden of establishing reasonable efforts on his part to secure suitable employment that were unsuccessful. Breeding thereby focuses on the alleged insufficiency of the Board's findings and largely ignores Superior Court's role in review thereof. Employer, also focusing almost exclusively on the deliberative process of the Board, responds that the Board's dual findings are supported by substantial evidence.

■ Assuming the Board's finding of Breeding not to be a *prima facie* displaced worker is sustainable, we agree with the employer that the record is devoid of any substantial evidence that Breeding made any real effort to find suitable employment. However, we conclude that the Board's predicate finding that Breeding was not a *prima facie* displaced worker fails the logical deductive reasoning requirement of *Levitt v. Bouvier*, Del.Supr., 287 A.2d 671 (1972). We further find that Superior Court, in attempting to cure the

Board's perceived deficiency, has exceeded the scope of its appellate review function.

■ The Board's findings and supportive reasoning for concluding that Breeding was not a *prima facie* "displaced" worker are limited to the following cryptic statement:

> Claimant's vocational history, his physical condition and lack of excessive work restrictions. Although the claimant is 62 years of age, and this would preclude any long retraining for employment, the lack of additional training would not eliminate all employment.

Superior Court understandably found the Board's "rationale" for refusing to find Breeding *prima facie* displaced to be "less than clear." The undisputed record evidence is that Breeding's vocation is that of ironworker and has been since 1948. Claimant has been in the work force, engaged in essentially manual labor jobs, since he left school in the eighth grade at the age of 15. At 62 claimant is three years from retirement and without any educational training since age 15. It is also medically undisputed that claimant has restrictions on lifting, pushing, pulling, sitting, standing, bending and climbing. These restrictions preclude Breeding from continuing regular employment as an ironworker. Nevertheless the Board, without reasons given, has concluded that neither Breeding's advancing age nor his lack of training would "eliminate all employment." We think the Board has thereby failed to explain in an understandable and coherent manner the factors upon which it relies and its reasons for concluding that claimant is not a *prima facie* displaced worker. *Chrysler Corporation v. Duff*, Del.Supr., 314 A.2d 915, 917 (1973); *Ham v. Chrysler Corporation*, Del.Supr., 231 A.2d 258, 262 (1967).

■ Superior Court, perhaps in an understandable desire to end the litigation, then made its own search of the record for "sufficient evidence" to sustain the Board's finding that Breeding did not qualify as a *prima facie* displaced worker. However, in doing so we think that the Court improperly substituted itself for the Board as a

finder of fact. The Court primarily relied upon the testimony of Stanley Scioscia, a vocational consultant employed by an insurance adjuster, who testified for the employer. Reviewing the testimony of Mr. Scioscia, the Court stated:

> The Court recognizes that claimant's limited education might affect his chances of securing several of the positions for which a high school graduate is preferred. The Court is satisfied, however, that the remaining positions are feasible in that they do not involve extensive retraining, do not require strenuous physical exertion or extension beyond claimant's limitations, and permit claimant to move about and change positions as needed. In light of this evidence, the Court is not convinced that claimant is an individual for whom a special job must be created if he is to be steadily employed. Consequently, the Court is in agreement with the Board's finding that claimant has not established a *prima facie* case showing that he is a displaced worker.

We think the Court thereby fell into the error of weighing the evidence, determining questions of credibility and making factual findings and conclusions. *Johnson v. Chrysler Corp.*, Del.Supr., 213 A.2d 64, 66 (1965). These functions are exclusively reserved for the Industrial Accident Board. Furthermore, the Superior Court misapplied the burdens of proof under the displaced worker doctrine. An employer's evidence of available employment does not determine whether a worker is *prima facie* displaced, but rather whether a *prima facie* displaced worker would be able to obtain specific employment if he sought to do so. *Howell v. Supermarkets General Corp.*, Del.Supr., 340 A.2d 833, 835 (1975); *Chrysler Corporation v. Duff*, 314 A.2d at 918, n. 1 (1967).

### Conclusion

There is substantial evidence in the record to support the Board's finding that Breeding did not injure his right leg, hip or ankle in the 1984 accident. Therefore, Superior Court's affirmance of the Board's denial of Breeding's related medical expense claim is affirmed. However, the Board's termination of Breeding's total disability benefits and Superior Court's affirmance thereof is reversed for misapplication of the displaced worker doctrine. Superior Court is directed to remand the case to the Industrial Accident Board for further proceedings consistent herewith.