## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DELAWARE VETERANS HOME, :
: C.A. No. K15A-12-001 WLW
Employer-Appellant, : Kent County
:
v. :
:
MONICA DIXON, :
:
Employee-Appellee. :

Submitted: August 18, 2016
Decided: November 4, 2016

## OPINION

On Appeal from the Decision of
The Industrial Accident Board
of the State of Delaware

*Reversed and Remanded*

Andrew M. Lukashunas, Esquire of Tybout Redfearn & Pell, Wilmington, Delaware; attorney for Employer-Appellant.

Walt F. Schmittinger, Esquire of Schmittinger & Rodriguez, P.A., Dover, Delaware; attorney for Employee-Appellee.

WITHAM, R.J.

Employer/Appellant Delaware Veterans Home appeals from a decision and award of the Industrial Accident Board (the "Board"). In that decision, the Industrial Accident Board directed the insurance carrier and physician[1] to "communicate and determine the proper [billing] codes for the remaining unpaid procedures" and awarded attorney's fees and a medical witness fee to Claimant/Appellee Monica Dixon.

Because the Board incorrectly applied the law, rendered a vague adjudication, and failed to base its findings on substantial evidence, the decision of the Board is **REVERSED** and **REMANDED** for further proceedings.

### ACTUAL AND PROCEDURAL BACKGROUND

Monica Dixon was injured in a work accident on August 23, 2010, while working for Delaware Veterans Home. As the Board noted in its decision: "[She] sustained injuries to her low back and has undergone several surgeries, including: L4-5 diskectomy, decompression with a disk replacement; and L3-4 fusion . . . ."[2] The dispute that gave rise to this appeal involves a surgery that was performed on January 29, 2014.

The Employer acknowledges that the surgery was compensable but disputes the amount owed to both the provider, Dr. Ali Kalamchi, and his physician assistant, Russell Queen. Dr. Kalamchi performed a surgery that has alternately been described by the Employer as an "L3-4 revision surgery that contemplated re-instrumenting that

---

[1] Neither of whom were parties.

[2] *Dixon v. Del. Veterans Home*, IAB Hearing No. 1358419, at 1 (Nov. 16, 2015).

level"[3] or by the Board as an "exploration, revision and re-instrumentation of the fusion."[4] It is the exact description of the surgery performed, as well as whether there was a proper coding for the surgery, that lies at the heart of the dispute below.

*I. The Billing Dispute*

On January 29, 2014, Dr. Kalamchi submitted an Operative Report and Health Insurance Claim Form to the Employer through its third-party administrator, PMA (originally "Pennsylvania Manufacturers' Association"). Dr. Kalamchi indicated that he had performed a procedure which included a laminectomy (code 22612) and arthrodesis, or fusion (63047). He further charged to explore the fusion (22830),to remove existing instrumentation (22852), and for spinal fixation (22841).

On February 24 and February 26, PMA supplied Dr. Kalamchi with Explanation of Benefits (EOB) forms. The EOBs indicated that PMA had evaluated the charges under the Delaware Health Care Payment System and would be making payment only for codes 22612 (laminectomy) and 63047 (arthrodesis). PMA left codes 22830, 22852, and 22841 unpaid as "bundled" charges.

Dr. Kalamchi appealed the denials and resubmitted on March 13 and March 16, 2014, providing pages from a CPT coding textbook to show that at least code 22841 should be paid. PMA continued to deny payment.

The Claimant ultimately filed a Petition to Determine Additional Compensation Due before the Board to resolve the billing dispute.

---

[3] Employer-Below, Appellant's Opening Br. on Appeal 3.

[4] *Dixon*, IAB Hearing No. 1358419, at 2.

*II. The Board Proceedings and Award*

In preparation for the hearing, Dr. Kalamchi was deposed and provided his description of the surgery, as discussed above. He explained that he personally selected the codes to be charged and opined that the codes he selected were not bundled.

At the hearing before the Board, the Employer offered the testimony of Krista Lenig, an employee of PMA. Ms. Lenig explained that she reviews bills for compliance with the Delaware Health Care Payment System, applying the National Correct Coding Initiative (NCCI) Policy Manual and the American Medical Association (AMA)'s Current Procedural Terminology (CPT).

With respect to the denied charges, Ms. Lenig explained that code 22841 is never separately billable, and was contemplated within codes 63047 and 22612. She also testified that code 22830 is bundled within code 22852, which in turn is bundled into the master code 63047.

The Board's decision described the procedure in detail. It placed significant weight on the doctor's testimony and Ms. Lenig's apparent admission that "the issue is that the wrong codes were given – not that the doctor is not owed the amounts charged."[5]

---

[5] *Dixon*, IAB Hearing No. 1358419, at 7. The hearing officer did not provide a citation to where Ms. Lenig admitted that the doctor is not owed the amount charged. The closest record evidence for that admission is as follows, during cross examination by the Claimant's attorney and a colloquy between the hearing officer and Ms. Lenig:

Q [Claimant's Attorney]: So what we have here is a problem of numbers, not the problem that he isn't owed anymore money for the work that he did as

On the basis of that admission, the Board found that the dispute here was over "billing/coding/bundling issues" and that the Employer was unable to present evidence "of the proper codes or any medical evidence that the procedures were unbundled." The Board emphasized that Ms. Lenig had admitted that "the surgical procedure that Dr. Kalamchi performed was more complex than the one for which he was paid."[6] As a result, the Board found, the core of the dispute was a "failure in communication and cooperation between the billing personnel in Dr. Kalamchi's office and in the carrier, PMA's, office."[7]

Rather than awarding specific additional compensation, the Board's decision purported to "direct[ ] those skilled on these matters . . . to communicate and determine the proper codes . . . so that the bills can be paid."[8] Because it believed it was awarding the Claimant compensation, the Board found the Claimant was entitled

---

documented in the operative note.

> A: The problem is he billed for a service that is not documented or for other services that are bundled.
>
> . . . .
>
> Q [Hearing Officer]: And during Mr. Schmittinger's cross examination of you, you admitted that, or it's not contested that Dr. Kalamchi is owed for this procedure, these amounts. The dispute is that the wrong codes were given.
> A: Correct. I reviewed for the codes.
> Q [Hearing Officer]: Okay.

Kalamchi Dep. 50:15–19, 60:20–25. It is unclear how Ms. Lenig's answer, given by an employee of a non-party insurance carrier, would operate as a sort of judicial admission and bind the Employer in these proceedings. Nonetheless, the Board's decision seemed to assume that Ms. Lenig's answer bound the Employer.

[6] *Dixon*, IAB Hearing No. 1358419, at 9.

[7] *Id.*

[8] *Id.* at 9–10.

to attorney's fees and a medical witness fee.

This appeal followed.

## EMPLOYER'S CONTENTIONS

The Employer contends that the Board's decision is unsupported by legal analysis, unsubstantiated by the evidence, and "fails to reach any meaningful determination."

The Claimant did not file a brief in this appeal, although counsel for the Claimant did enter an appearance.

## STANDARD OF REVIEW

This Court's function on an appeal from a Board decision is limited. The Court "review[s] the record to determine whether the Board's decision is supported by substantial evidence and is free from legal error."[9] "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] When the issue appealed from is solely a question of law, the Court reviews its decision *de novo*.[11] Otherwise, the Court reviews for an abuse of discretion.[12]

## DISCUSSION

The Court has thoroughly examined the record, scrutinized the Employer's

---

[9] *Vincent v. E. Shore Mkts.*, 970 A.2d 160, 163 (Del. 2009).

[10] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988) (citing *DiFilippo v. Beck*, 567 F. Supp. 110, 113 (D. Del. 1983) (applying state law in diversity)).

[11] *Vincent*, 970 A.2d at 163.

[12] *Id.*

brief, and reviewed the governing statutes, regulations, and applicable case law. The Employer's arguments on appeal have merit, and the decision of the Board will be reversed, for three reasons: first, the Board's decision was legally erroneous in that it incorrectly analyzed the coding and payment dispute and failed to follow the proper procedure; second, the award lacked the definiteness necessary to constitute a proper adjudication; and third, the decision was not supported by substantial evidence because the doctor's opinion was not probative of whether the bill was properly coded.

### I. The Board Decision Failed to Apply the Law Governing its Decision.

The Board's decision misapprehended the applicable law: failing to apply the appropriate provisions, misplacing the burden of proof, and omitting a necessary party. While potentially helpful in their analysis of other issues, decisions like *Rawley v. J.J. White, Inc.*,[13] which were decided prior to the current statutory scheme, do not control the outcome of this dispute. This proceeding involves a more limited question about correct coding, and the legal standard is provided by statute and regulation.

To explain the law that applies, it is important to review the changes that have recently been made to workers' compensation in Delaware over the past decade. Delaware's workers' compensation system has been the subject of three major

---

[13] 918 A.2d 316 (Del. 2006).

statutory reform efforts.[14] The first was the Workers' Compensation Improvement Act of 1997, which focused primarily on reducing delays in the delivery of benefits to claimants.[15] The second reform, which bears directly on this case, was a consensus workers' compensation reform bill (Senate Bill 1) which passed in January 2007.[16]

Senate Bill 1 was focused primarily on reducing high workers' compensation premiums.[17] While Senate Bill 1 enacted a number of measures, most relevant to this case is its creation of a Health Care Advisory Panel, which in turn developed the Delaware Health Care Payment System.[18] The express purpose of the Health Care Payment System was to address increasing costs by:

> establish[ing] a system that eliminates outlier charges and streamlines payments by creating a presumption of acceptability of charges implemented through a transparent process, involving relevant interested parties, that prospectively responds to the cost of maintaining a health care practice, eliminating cost shifting among health care service categories and avoiding institutionalization of rate creep.[19]

The results of the system's adoption achieved some success. From 2007 to

---

[14] Workers' Comp. Task Force, *Report to the Governor and General Assembly of the State of Delaware* 1 (2013), http://ltgov.delaware.gov/taskforces/wctf/20130513/Workers'%20 Compensation%20Task%20Force%20Report%20--%20final%20draft.pdf; *see generally* Act of Jan. 17, 2007, ch. 1, 76 Del. Laws 1, 1–13 (codified as amended at 18 *Del. C.* §§ 2607, 2609, and scattered sections of 19 *Del. C.*) (enacting workers' compensation reform).

[15] Workers' Comp. Task Force, *supra* note 26, at 1.

[16] *Id.* at 2.

[17] *Id.*

[18] Act of Jan. 17, 2007, §§ 10–11, 76 Del. Laws at 3–6 (codified as amended at 19 *Del. C.* §§ 2322A, 2322B).

[19] *Id.* § 11, 76 Del. Laws at 4 (codified as amended at 19 *Del. C.* § 2322B).

2012, premiums dropped by over forty percent.[20] But in 2011 and 2012, premiums increased significantly, and in response the General Assembly created the Workers' Compensation Task Force to review the rise and make recommendations.[21] The Task Force gave its recommendations in May 2013,[22] and that third set of reforms were adopted by the General Assembly the next month.[23]

The statutory scheme created by Senate Bill 1 consists of three parts that are particularly relevant here: the provider certification process, the Delaware Health Care Payment System, and the procedure for challenging a denied payment by a provider or employer.

*A. Provider Certification*

All parties appear to agree that Dr. Kalamchi was a certified provider.[24] As such, he has certain rights and obligations under the reform provisions.

One component of the reforms is the provider certification process.[25] Certified providers that meet the minimum certification requirements must also agree to a set of terms and conditions, including "[c]ompliance with Delaware workers' compensation law and rules" and "[a]cceptance of reimbursement and not unbundled

---

[20] Workers' Comp. Task Force, *supra* note 26, at 1.

[21] *Id.* at 3.

[22] *Workers' Compensation Task Force*, Off. Lieutenant Governor, http://ltgov.delaware.gov/taskforces/wctf/index.shtml (last visited Oct. 18, 2016).

[23] Act of June 27, 2013, 2013 Del. Legis. Serv. (West) 55.

[24] Employer-Below, Appellant's Opening Br. on Appeal 15.

[25] Act of Jan. 17, 2007, § 13, 76 Del Laws at 7 (codified as amended at 19 *Del. C.* § 2322D).

[sic] charges into separate procedure codes when a single code is more appropriate."[26]

Essentially in exchange for a provider's agreement to those terms and conditions, the provider is entitled to both (1) a presumption that her services are reasonable and necessary when she treats an acknowledged injury under the Delaware health-care practice guidelines[27] and (2) to prompt payment (within thirty days) of each invoice unless the bill is contested in good faith.[28]

Dr. Kalamchi is entitled to all of the benefits and subject to all the obligations of a certified provider, including a responsibility to submit compliant bills and to avoid submitting unbundled charges.

### B. *The Delaware Health Care Payment System*

The Board failed to apply provisions of law that established and defined the Delaware Health Care Payment System. The Board identified the correct regulation but then seemed to suggest that "improper coding" did not necessarily imply "improper unbundling."[29] That conclusion is a clear misapplication of the law.

The most important facet of the statutory reforms, at least as pertains to this case, was the Delaware Health Care Payment System. The Delaware Department of Labor implemented the System by regulation, with the relevant version made

---

[26] 19 *Del. C.* § 2322D(a)(1), (a)(2). For discussion of the term "bundling," see *infra* Section I.B.

[27] *Id.* § 2322C(6).

[28] *Id.* § 2322F(h).

[29] *Dixon*, IAB Hearing No. 1358419, at 8–9.

10

effective September 11, 2013.[30]

Under the System, "an employer and/or insurance carrier shall pay the lesser of the rate set forth by the payment system or the health care provider's actual charge."[31] The statute dictates that the payment system "shall conform to the Current Procedural Terminology ('CPT')" as laid out by the AMA.[32] CPT codes, according to the AMA, are "the most widely accepted medical nomenclature used to report medical procedures and services under public and private health insurance programs.[33]

It also contemplates insurers applying so-called "bundling edits," noting that "[p]ropietary bundling edits more restrictive than the National Correct Coding [(NCCI)] Policy Manual . . . shall be prohibited."[34]

"Bundling edits," as defined by the statute, refers to "the process of reporting codes so that they most comprehensively describe the services performed."[35] As laid out in the NCCI Policy Manual, a physician "unbundles" if he uses multiple codes when a single comprehensive code is available:

---

[30] 17 Del. Reg. Regs. 322 (Sept. 1, 2013), http://regulations.delaware.gov/register/september2013/final/17%20DE%20Reg%20322%2009-01-13.htm (codified as amended at 19 *Del. Admin. C.* § 1341); *see also* 19 *Del. C.* § 2322B(14) (2013).

[31] 19 *Del. C.* § 2322B(4) (2013).

[32] *Id.* § 2232B(10)(a); *see also* 19 *Del. Admin. C.* § 1341-4.1.5, -4.2, -4.3.

[33] *About CPT®*, Am. Med. Ass'n, http://www.ama-assn.org/ama/pub/physician-resources/solutions-managing-your-practice/coding-billing-insurance/cpt/about-cpt.page? (last visited Oct. 20, 2016).

[34] 19 *Del. C.* § 2232B(10)(c); *see also* 19 *Del. Admin. C.* § 1341-4.1.5, -4.2.

[35] 19 *Del. C.* § 2322B(10)(c).

Procedures should be reported with the most comprehensive CPT code that describes the services performed. Physicians must not unbundle the services described by a HCPCS/CPT code. Some examples follow:

- A physician should not report multiple HCPS/CPT codes when a single comprehensive HCPS/CPT code describes these services. . . .

- A physician should not fragment a procedure into component parts. . . .

. . . .

- A physician should not unbundle services that are integral to a more comprehensive procedure.[36]

As for billing, the statute provides that "[c]harges for medical evaluation, treatment, and therapy . . . shall be submitted to the employer or insurance carrier along with a bill or invoice for such charges, accompanied by records or notes, concerning the treatment or services submitted for payment, documenting the employee's condition and the appropriateness of the evaluation, treatment or therapy."[37] "Treatments . . . provided by a certified health care provider shall be paid within 30 days of receipt . . . unless compliance with the health care payment system . . . adopted pursuant to § 2322B . . . of this title is contested, in good faith, to the utilization review system set forth in subsection (j) of this section below."[38] And

---

[36] Ctrs. for Medicare & Medicaid Servs., *National Correct Coding Initiative Policy Manual for Medicare Services* I-7–8 (Jan. 1, 2014), https://www.cms.gov/Medicare/Coding/NationalCorrect CodInitEd/index.html

[37] 19 *Del. C.* § 2322F(a) (2013).

[38] *Id.* § 2322F(d).

"[d]enial of payment . . . whether in whole or in part, shall be accompanied with written explanation of [the] reason for denial."[39]

In reviewing the denial of the Claimant's claim, the Board must consider whether the bill complies with the Delaware Health Care Payment System. Such an analysis should include a discussion of what service(s) are encompassed by each CPT code charged and whether any of the codes are subsumed within another code, by specific reference to the AMA's authoritative CPT materials or the appropriate standards from the NCCI Policy Manual.

It is insufficient to make general, hypothetical statements (e.g., "*if* Employer/Carrier is following a proprietary bundling edit that is more restrictive [than the NCCI standards] . . . , that proprietary bundling edit would be prohibited"[40]) without identifying evidence that supports the statement. There was no record evidence (although there *was* contrary testimony by the carrier's representative) to support a contention that the carrier's edits were more restrictive than those dictated by the NCCI standards, and the Board did not make any effort to identify any such evidence.

Instead, the Board engaged in a freewheeling discussion of the evidence before it and came to its puzzling conclusion. That discussion did not include findings of fact other than a mere summary of evidence presented by both parties. The Court infers that the Board credited Dr. Kalamchi's assertion that the "parts of the

---

[39] *Id.* § 2322F(e).

[40] *Dixon*, IAB Hearing No. 1358419, at 8 (emphasis added).

procedure he performed" "were not unbundled" yet seemed also to credit Ms. Lenig's testimony that "improper codes" were submitted.[41] Without a factual finding, it is unclear how the procedure can be *both* coded improperly and yet not unbundled. The Board seemed to believe that the question of bundling requires "medical evidence," but the statute and regulations make clear that bundling edits are governed by the fairly extensive manual promulgated under the NCCI and not such a case-by-case determination. Because the Board later concluded that the issue was one of "improper coding" and not improper bundling, it seems to have tried to harmonize both parties' evidence without applying any analysis. That was problematic because it was attempting to resolve the principally legal contention that the codes were improperly unbundled.

The Board also gave weight to its gloss on Ms. Lenig's testimony, finding that she "admitted" that the procedure performed was more complex than the one reported by the provider. It is unclear to what extent Ms. Lenig's purported admission would be relevant in a determination of whether the bill as submitted was coded appropriately. As discussed above, Delaware's Healthcare Payment System places the onus on the provider to code his bills appropriately. A fortiori, it places no burden on the Employer to generate compliant bills on the provider's behalf or to act against its own interest by suggesting codes or modifiers that may result in a higher reimbursement.

---

[41] *Id.* at 9.

*C. Challenging a Denied Payment*

The parties and the Board failed to follow the correct process for handling the dispute, and failed to join the provider as a party.

The procedure for an employer to challenge a bill or for a claimant to challenge a denial of payment based upon coding issues is opaque. At first blush, it may appear that utilization review is the proper route,[42] but this presents a problem: utilization review was not and is not yet available for that purpose.[43]

Instead, the procedure is governed by a statute that predates the current reform efforts: 19 *Del. C.* § 2346. Under § 2346, the Board may be called upon by any interested party to resolve a dispute between a provider and an employer or carrier about payment of "medical and other services." The statute lays out a few requirements for such adjudications, including proper notice and a requirement that the Board "hear and determine the matter."[44] It limits a payer's liability to "the amount deemed reasonable and necessary" so long as "the provider is subject to the jurisdiction of the Board and made a party to the proceedings."

As in all proceedings before the Board, a party bringing a petition carries the burden of proof.[45]

---

[42] *Id.* § 2322F(d), (j).

[43] 19 *Del. Admin. C.* § 1341-5.3.

[44] 19 *Del. C.* § 2346.

[45] *See Walt v. Del. Home & Hosp. for the Chronically Ill*, 930 A.2d 929 (Table), 2007 WL 1947370, at *2 (Del. July 5, 2007) (citing *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 854 (Del. 1985)) ("As the moving party, [Claimant] had the burden of proving entitlement to workers' compensation benefits.").

The Board and the Employer, at least, recognize that utilization review was not available given the nature of the dispute.[46] But the Board did not make any reference to § 2346, instead citing pre-2007 cases for the proposition that reasonableness of medical expenses is a factual question for the Board to decide.[47] Citation to that standard was misguided. The essential dispute is not over the *reasonableness* of the expenses (which the parties agree were for compensable services) but whether the charges, as billed, were payable under the Delaware Healthcare Payment System.

In such a situation, where there is a dispute over coding, and until utilization review becomes available, it is the Board's role to determine whether the bill as submitted is compliant. If it is not compliant, the inquiry ends, and the Employer is not responsible for paying the charges. If it is compliant, again, the inquiry ends, and the Employer must pay the charges according to the Delaware Healthcare Payment System.

The Board here attempted to go further after finding that the bill was noncompliant. It tried to determine the matter by issuing an award ordering two non-parties to "communicate and determine the proper codes" rather than performing its own adjudicative function and meeting the statutory mandate to "hear and determine" the dispute between the parties.[48] That is not within its purview under the workers' compensation law.

---

[46] *Dixon*, IAB Hearing No. 1358419, at 8.

[47] *Id.* at 7.

[48] *See also infra* Section II.

16

With utilization review unavailable, in a proceeding under § 2346 that is based upon coding, the claimant as petitioner bears the burden of showing that the provider is entitled to the requested payment. A claimant can do so by demonstrating that the bill as submitted complied with the requirements of the workers' compensation statutes and regulations. If an employer brings a petition, the employer would bear the burden of showing *non*compliance.

In this case, the Board improperly placed the burden on the Employer to come forward with "evidence of the proper codes or . . . medical evidence that the procedures were unbundled."[49] The Employer bore no such burden, and was certainly under no burden to demonstrate to the provider how to maximize his revenue. The Claimant, as petitioner, had the burden of showing that the codes were justified. She could have done so by introducing evidence from the AMA's CPT resources and by reference to the NCCI Policy Manual. Instead, the only evidence the Claimant presented was testimony from the doctor, who was not qualified to determine the ultimate legal question of whether the charges were bundled or unbundled charges.

Finally, neither the parties nor the Board took note of the statutory procedure for challenging payment of medical expenses, and thus failed to join the provider as a party to the action. That alone would likely rob the Board of jurisdiction over the dispute. But in combination with a failure to meaningfully interact with the statutory and regulatory requirements of the Health Care Payment System, it is fatal and requires remand for a new hearing.

---

[49] *Dixon*, IAB Hearing No. 1358419, at 9.

*II. The Board's Award Was Too Indefinite.*

As was briefly discussed above, the Board's purported adjudication did not meet the statutory requirements to constitute a final merits determination.

A review of Delaware case law does not readily uncover opinions explaining the requirements for a judgment such as the Board's award to be valid. Nonetheless, courts hold it as "a fundamental rule that a judgment should be complete and certain in itself"

> and that the form of the judgment should be such as to indicate with reasonable clearness the decision which the court has rendered, so that the parties may be able to ascertain the extent to which their rights and obligations are fixed, and so that the judgment is susceptible of enforcement in the manner provided by law. Thus, while the formal wording of a judgment is not sacramental, a judgment must be precise, definite, and certain.[50]

And beyond general principles, the statutory authority granted to the Board seems to assume a certain amount of definiteness in its awards. For example, an award may only be entered as a judgment of record with the prothonotary if the party can file "the *amount* of the award and the date of the award."[51] And a written decision by the Board must "sucinctly and clearly state its findings of fact and conclusions of law."[52]

The reason a petition was submitted to the Board was to determine whether the

---

[50] 46 Am. Jur. 2d *Judgments* § 66 (2016) (citations omitted).

[51] 19 *Del. C.* § 2349.

[52] *Id.* § 2348.

bill was payable, not to determine how to *make* it payable. The Board went beyond its statutory authority when it ordered the parties to reach a negotiated resolution. It could have reduced its award to a sum certain, denied the award outright, or requested the parties produce further evidence so that it could render a decision. Instead, it proceeded to order the provider and carrier, both non-parties, essentially to settle the matter between themselves. Such a judgment would defeat the purpose of Board review–it is up to the Board to determine the matter, not to shift adjudicative responsibility to other parties. Failure to do so was legally erroneous.

### *III. The Board's Decision Was Not Based on Substantial Evidence.*

It also cannot be said that the decision was based on substantial evidence. The sole evidence that the coding was proper was Dr. Kalamchi's testimony that he believed it to be proper. While Dr. Kalamchi's testimony might be probative of his good intentions, it hardly establishes the accuracy of the coding under the Delaware Health Care Payment System. In fact, Dr. Kalamchi testified that he was "not aware of all the national and local or Medicare [standards]" but that he was "aware of what I'm doing is the right coding."[53]

Inching closer to substantial was evidence presented by the Claimant with regard to code 22841 (fixation). On balance, though, it weighs against the Claimant rather than suggesting the charges are proper. The Claimant submitted to the insurer pages from an unidentified CPT manual (apparently published by OptumInsight, Inc.

---

[53] Kalamchi Dep. 30:17–20.

and not the AMA) that appear to show that 22841 is acceptable as an add-on code.[54] However, the same pages show that code 22841 has zero relative value units, which suggests that it may not be reimbursable. They also read "Do not report the . . . removal ( . . . 22852 . . . . ) procedures in addition to the insertion of the new instrumentation," suggesting that even if code 22841 is payable, 22852 is not. And it says nothing about code 22830 (explore fusion), which is also disputed as a bundled charge. Expert testimony regarding coding or direct evidence of the controlling standards is necessary to determine the legal question of whether the charges comply with Delaware's Health Care Payment System.

On remand, then, the Claimant must be given an opportunity to make a stronger evidentiary showing sufficient for a reasonable mind to come to the conclusion that the bill was properly coded and payable as submitted.

## CONCLUSION

Because the Board incorrectly applied the law, rendered a vague adjudication, and failed to base its findings on substantial evidence, the decision of the Board is **REVERSED** and **REMANDED** for further proceedings. On remand, the Board must take evidence and make findings of fact as to the services performed and their proper coding under the Delaware Health Care Payment System. If the Board finds that additional compensation is due, it must fix the amount due as a sum certain.

---

[54] Employer's Ex. 3.