# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ELZUFON, AUSTIN, TARLOV   )
MONDELL, P.A.,   )
  )
    Employer Below-Appellant,   )   C.A. No. N22A-03-006 FWW
  )
      v.   )
  )
DELISA LEWIS,   )
  )
    Claimant Below-Appellee.   )

Submitted: November 7, 2022
Decided: January 10, 2023

## MEMORANDUM OPINION

*On Appeal from the Industrial Accident Board:*

## AFFIRMED.

Walter J. O'Brien, Esquire, WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY LLP, 2 Penn's Way, Suite 300, New Castle, Delaware 19720; Attorney for Appellant Elzufon, Austin, Tarlov & Mondell, P.A.

Tabatha L. Castro, Esquire, THE CASTRO FIRM, INC. 200 Continental Dr., Suite 401, Newark, Delaware 19713; Attorney for Appellee Delisa Lewis.

**WHARTON, J.**

# I.     INTRODUCTION

Elzufon, Austin, Tarlov, & Mondell, P.A. ("Elzufon") filed a Notice of Appeal on March 18, 2022 seeking a review of the February 17, 2022 decision by the Industrial Accident Board ("Board"). Elzufon contends that the Board erred when it granted Appellee Delisa Lewis' ("Lewis") Petition for Additional Compensation Due, concluding that conservative treatment to her cervical spine was causally related to her 2016 compensable work accident.

In considering this appeal, the Court must determine whether the Board's decision is supported by substantial evidence and is free from legal error. Specifically, the Court must determine whether the Board erred as a matter of law when it denied Elzufon's Motion to Dismiss based on the two-year statute of limitations under 19 *Del. C.* § 2361(a) and whether the Board abused its discretion in determining the factual causation of the cervical medical treatment in dispute. Upon consideration of the pleadings before the Court and the record below, the Court finds that the Board's determination was supported by substantial evidence in the form of the opinion of Dr. Michael Newell that Lewis' cervical radiculopathy was causally related to her earlier compensable work injury. Further, the Board did not err as a matter of law when it denied Elzufon's Motion to Dismiss. Accordingly, the Board's decision is **AFFIRMED.**

2

## II.    FACTUAL AND PROCEDURAL CONTEXT

In its decision, the Board set out the procedural posture of the case as well as a detailed summary of the evidence presented at the hearing before the Board on January 31, 2022.[1]  Since neither party takes exception to the Nature and Stage of the Proceedings or the Summary of the Evidence set out in the Board's decision, the Court accepts them.[2]  On August 29, Lewis sustained a compensable injury to her upper right extremity while working for Elzufon.[3]  She had surgery on her right shoulder in June 2018.[4]  The parties reached an agreement as to compensation at the rate of $688.46 per week and additional disfigurement benefits for seven weeks.[5]  Lewis filed a Petition to Determine Additional Compensation Due on April 1, 2021 seeking further medical treatment for a cervical spine injury which she claimed was causally related to her 2016 work injury.[6]  Elzufon disputed that any injury to the cervical spine was related to Lewis' prior injury.[7]  It further argues that Lewis was alleging an injury to a "new body part" and, since more than two years had passed

---

[1] *Delisa Lewis v. Elzufon, Austin, Tarlov & Mondell*, *P.A.*, No. 1489024, at 2-12, (I.A.B. Feb. 17, 2022), D.I. 6 (Tab 7).
[2] *Id.*
[3] *Id.,* at 2.
[4] *Id.*
[5] *Id.*
[6] *Id.* The Board incorrectly stated at page 2 that the petition was filed on June 20, 2019.  The correct date is April 1, 2021.  *See* Record, at Tab 1.  The incorrect date played no part in the Board's decision and appears to be the only time the date was cited incorrectly in the Board's decision.
[7] *Id.*

since the 2016 work injury, the petition should be dismissed pursuant to 19 *Del. C.* § 2361(a).[8]

At the hearing before the Board, Elzufon presented a Motion to Dismiss, based on its contention that Lewis' cervical spine complaints related to a new body part unrelated to her shoulder injury, and thus, her petition was untimely as outside the two-year statute of limitations of 19 *Del. C.* § 2361(a).[9] After deliberating, the Board denied the motion prior to taking testimony.[10] At the hearing, Lewis presented the deposition testimony of William M. Newell, M.D., a physical medicine, rehabilitation, and interventional spine specialist, and testified herself.[11] It was Dr. Newell's opinion that Lewis' cervical spine problems were causally related to her 2016 compensable work injury to her right upper extremity.[12] He diagnosed her with cervical radiculopathy for which the contested treatment was reasonable, necessary and causally related to Lewis' prior work injury.

Dr. Newell testified that Lewis was referred to him by Dr. Eric Johnson for residual symptoms following surgery.[13] She complained of neck pain radiating down into the right shoulder and arm with numbness, tingling, and paresthesia down

---

[8] *Id.,* at 2-3.
[9] *Id.,* at 2.
[10] *Id.,* at n. 1.
[11] *Id.,* at 2, 6.
[12] *Id.,* at 2.
[13] *Id.,* at 3.

4

to the right arm.[14]  A previous electromyography ("EMG") was negative for signs of a pinched nerve in her arm or neck,[15] which was "fairly common" and often consistent with neck issues according to Dr. Newell.[16]

When Dr. Newell performed a physical examination on her, Lewis demonstrated an abnormal reflex bilaterally, which can be normal.[17]  She also had a positive Spurling's maneuver, which is typical of an injured or entrapped nerve of the neck.[18]  Dr. Newell diagnosed a cervical radiculopathy affecting the right C6 nerve root between the fifth and sixth bones of the neck.[19]  He recommended epidural steroid injections to settle down the nerve and improve her symptoms.[20]

Dr. Newell testified that an MRI from February 12, 2019 showed a disc osteophyte complex.[21]  He agreed that it did not show clear nerve compression, or pinching, but the MRI did show a mild narrowing or "mechanical radiculopathy."[22] According to Dr. Newell, a "mechanical radiculopathy" is an injury or aggravation of an injury to a disc that causes inflammation, which can "biomechanically" irritate

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.,* at 4.
[22] *Id.*

a nearby nerve.[23] Dr. Newell also did not conclude that Lewis' normal findings on an EMG to her upper extremities On April 30, 2020 was inconsistent with his diagnosis of cervical radiculopathy, since, in his view, positive findings only appear in the most severe cases, not mild or moderate ones.[24]

Dr. Newell disagreed with Dr. Scott Rushton, Elzufon's medical expert, that Lewis' neck problems were unrelated to her repetitive use work injury and prior shoulder surgery.[25] In Dr. Newell's view, Lewis' neck problems, like many patients who have shoulder surgery, were an "indirect unfortunate consequence of being treated surgically."[26] In Lewis' case, she suffered no isolated injury to the cervical spine, and but for her shoulder injury requiring surgery, she would not have developed neck issues.[27]

Dr. Newell made a number of concessions on cross examination. He agreed that: cervical radiculopathy is often associated with degenerative disease and Lewis is in her mid-fifties; physical therapy records from 2019 show Lewis referred to intermittent back pain since 1986; and prior x-rays were positive for scoliosis, which over time can result in a pinching of a spinal nerve.[28] He pointed out, however, that

---

[23] *Id.*
[24] *Id.*
[25] *Id.*, at 5.
[26] *Id.*
[27] *Id.*
[28] *Id.*

it would be unusual for scoliosis to affect the cervical area or it would be only a "incidental finding."[29] Dr. Newell also agreed with Dr. Rushton that Lewis' complaint of pain in her fourth and fifth fingers as well as elbow pain is inconsistent with the C6 nerve root and with her cervical radiculopathy originating at C5-6.[30] Finally, Dr. Newell conceded that there were no medical records supporting a view that Lewis' altered body mechanics post-surgery caused a cervical radiculopathy.[31]

Lewis testified that Dr. Eric Johnson performed shoulder surgery on her on June 15, 2018, which was followed by a course of physical therapy.[32] When she returned to work, she continued to experience right hand numbness, tingling, and tightness.[33] She followed up with Dr. Johnson who determined her right shoulder problems were resolved by the surgery, but referred her to Dr. Newell for possible neck issues.[34] After receiving her first injection from Dr. Newell, her pain was relieved for about five or six weeks, but then her neck symptoms slowly began to return..[35]

---

[29] *Id.*
[30] *Id.,* at 6.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.,* at 7.

Dr. Scott Rushton, an orthopedic spine surgeon, testified by deposition on behalf of Elzufon.[36]  His conclusion was that Lewis sustained a right shoulder injury resulting from repetitive use which was appropriately treated by surgery that appeared to result in a good subjective outcome.[37]  He said that there is no objective evidence to support a repetitive motion injury to Lewis' cervical spine as a result of work related injuries.[38]

Dr. Rushton testified that Lewis reported at the defense medical examination that surgery provided her with subjective improvement, but she later developed complaints of pins and needles in her right elbow radiating to her fourth and fifth digits as well as an aching discomfort in her right shoulder.[39]  She denied what Dr. Rushton described as typical cervical spine symptomology – neck pain, mechanical pain along the scapular or shoulder blade area or any dermatomal or radicular type pain in a nerve distribution.[40]

Two EMGs that Dr. Rushton reviewed were normal with no evidence of cervical radiculopathy – one done on October 10, 2016 and the other done on March 11, 2019.[41]  An MRI report of the cervical spine showing a disc osteophyte complex

---

[36] *Id.,* at 8.
[37] *Id.,* at 11.
[38] *Id.*
[39] *Id.,* at 8.
[40] *Id.*
[41] *Id.*

8

at C3-4 with mild to moderate central and foraminal narrowing was "relatively" normal in Dr. Rushton's opinion.[42] Dr. Rushton acknowledged that Lewis showed improvement after receiving injections, but did not feel she was a candidate for any invasive treatment because he saw no structural problem amenable to an injection.[43]

Dr. Rushton also found no objective evidence to support Dr. Newell's theory that Lewis developed cervical radiculopathy post-surgery.[44] None of the treatment records supported it, nor did the EMG and MRI reports, the physical examination, or Lewis' clinical complaints.[45] In Dr. Rushton's opinion, there is no objective evidence to support any diagnosis of cervical radiculopathy, much less one related to Lewis' previous right shoulder injury.[46] According to Dr. Rushton, there was no evidence to support a cervical spine work-related repetitive movement injury, the mechanics of the injury did not fit the diagnosis, and Lewis' physical examination completely lacked any evidence of radiculopathy.[47] He ascribed Lewis' improvement after injections to a possible "placebo effect."[48]

Dr. Rushton acknowledged on cross-examination that he did not ask Lewis when he saw her about any repetitive activities at work that might have caused her

---

[42] *Id.,* at 9.
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.,* at 10.

pain.[49] He also testified that he saw Lewis for the first and only time two years and four months ago and had not reviewed any updated treatment records other than Dr. Newell's deposition testimony.[50]

The Board concluded that Lewis' contested medical treatment to her neck was reasonable, necessary, and causally related to the previous compensable 2016 injury.[51] In doing so, the Board found the opinion of Dr. Newell on the issue of causation of Lewis' cervical spine pain more convincing than that of Dr. Rushton.[52] It based that finding on the timing of Lewis' symptoms since she never had any history of neck problems until after her right shoulder surgery.[53] The Board found Dr. Rushton's belief that Lewis' condition improve after receiving injection was due to a "placebo effect" unsubstantiated.[54]

The Board also explained its denial of Elzufon's Motion to Dismiss.[55] The Board explained that pursuant to 19 *Del. C.* § 2361(b), Lewis' present petition adding what Elzufon describes as a new body part was filed well within five years of the compensable injury.[56] Specifically, more than five years had not passed since

---

[49] *Id.*
[50] *Id.*
[51] *Id.,* at 12.
[52] *Id.,* at 13.
[53] *Id.,* at 14.
[54] *Id.,* at 15.
[55] *Id.,* at 16-17.
[56] *Id.,* at 16.

Lewis had received compensation for disfigurement benefits related to the 2016 injury.[57] Alternatively, the Board observed that under § 2361(a), in a cumulative detrimental effect case such as Lewis', the two-year statute of limitations starts to run from the date the "detrimental effect" is manifested, and the claimant, as a reasonable person, knows or should know it is related to employment.[58] Here, the Board found that date was either January 8, 2020 when Dr. Eric Johnson assessed Lewis for a cervical radiculopathy or April 8 and 22, 2019 when Dr. Newell administered her injections.[59] Lewis filed her petition on April 1, 2021, making all of those dates within the two-year period.[60]

Elzufon appeals the Board's decision.

### III. THE PARTIES' CONTENTIONS

Elzufon contends that the Board's decision should be reversed on two grounds. First, it contends that the Board erred as a matter of law when it denied Elzufon's Motion to Dismiss on statute of limitations grounds.[61] Specifically, it contends that as a new injury to a different body part than the compensable injury, Lewis' petition for additional compensation for her neck pain is subject to the two-

---

[57] *Id.*
[58] *Id.*
[59] *Id.,* at 17.
[60] *Id.*
[61] Elzufon's Op. Br., at 11-13, D.I. 13.

year statute of limitations of 19 *Del. C.* § 2163(a).[62] Lewis was diagnosed with cervical radiculopathy when she visited Dr. Newell on March 19, 2019. Thus, her petition filed on April 1, 2021 was time-barred.[63]

The second ground for reversal Elzufon argues is that the Board abused its discretion when it failed to rely on substantial evidence in making its factual causation determination of Lewis' cervical medical treatment.[64] It its view, the Board should not have credited Dr. Newell's diagnosis of cervical radiculopathy because it is unsupported by any documentary or objective medical evidence.[65]

In response, Lewis argues that the Board was correct in relying on the five-year statute of limitations of 19 *Del. C.* §2361(b).[66] Further, even if the two-year limitations period applied, the starting date when that period began to run was January 8, 2020 when Lewis sought treatment from her surgeon, Dr. Johnson.[67] Lewis' also disputes Elzufon's contention that the Board abused its discretion when it credited Dr. Newell's diagnosis and causation opinion and rejected Dr. Rushton's.[68]

## IV. STANDARD OF REVIEW

---

[62] *Id.,* at 11.
[63] *Id.,* at 12-13.
[64] *Id.* at 13-16.
[65] *Id.,* at 14-15.
[66] Lewis' Ans. Br., at 9-11, D.I. 14.
[67] *Id.*
[68] *Id.,* at 11-15.

The Board's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[69] Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion.[70] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[71] Questions of law are reviewed *de novo*,[72] but because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings,[73] it must uphold the decision of the Board unless the Court finds that the Board's decision "exceeds the bounds of reason given the circumstances."[74]

## V.    DISCUSSION

It appears to the Court that the Board's denial of Elzufon's Motion to Dismiss on statute of limitations grounds necessarily implicates its decision on causation. For that reason, the Court first considers whether there was substantial evidence to support the Board's factual causation determination, and then considers its decision on the Motion to Dismiss.

---

[69] *Conagra/Pilgrim's Pride, Inc. v. Green*, 2008 WL 2429113, at *2 (Del. June 17, 2008).
[70] *Kelley v. Perdue Farms*, 123 A.3d 150, 153 (Del. Super. 2015) (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).
[71] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).
[72] *Kelley*, 123 A.3d at 152–53 (citing *Vincent v. E. Shore Markets*, 970 A.2d 160, 163 (Del. 2009)).
[73] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del. 1965)).
[74] *Bromwell v. Chrysler LLC*, 2010 WL 4513086, at *3 (Del. Super. Oct. 28, 2010) (quoting *Bolden v. Kraft Foods*, 2005 WL 3526324, at *3 (Del. Dec. 21, 2005)).

## A. There Was Substantial Evidence to Support the Board's Factual Causation Determination.

The Court's role on appeal is not to re-weigh the evidence and decide whether the Board reached the correct decision. Instead, it is to decide whether there was substantial evidence to support the Board's decision and whether that decision was free from legal error. After listening to the evidence, the Board found that Lewis had met her burden of demonstrating by a preponderance of the evidence that medical treatment for her cervical spine is reasonable, necessary, and causally related to the underlying 2016 compensable work injury.[75] In reaching that determination, the Board found that Dr. Newell's diagnosis of a cervical radiculopathy which was causally related to Lewis' compensable injury more credible than Dr. Rushton's opinion that Lewis did not have cervical radiculopathy at all.[76]

The Board explained the basis of that determination in its Decision. It found that Lewis' 2018 surgery for her compensable injury caused "sequelae" for the development of her cervical spine symptoms.[77] In other words, the Board found that her cervical spine symptoms were a consequence of her surgery. Dr. Newell began treating Lewis nine months after her surgery, and when he examined her in March

---

[75] *Delisa Lewis v. Elzufon, Austin, Tarlov & Mondell, P.A.,* at 11.
[76] *Id.,* at 13.
[77] *Id.*

14

2019, he found symptoms of an irritated or entrapped nerve of the neck at C5-6.[78] In April 2019, he performed epidural steroid injections to the neck to settle down the nerve and which successfully provided symptomatic relief.[79] The Board found Dr. Newell's causation opinion persuasive based on the timing of Lewis' symptoms since she never had any prior medical history of neck problems until after her shoulder surgery.[80] As Dr. Newell explained, many patients who have had shoulder surgery develop cervical spine issues.[81] Here, Lewis' neck issues were aggravated by her rehabilitation efforts, in Dr. Newell's view.[82]

Dr. Newell's ultimate causation opinion, expressed to a reasonable degree of medical probability, as supported by Lewis' testimony, was substantial evidence of causation such that a reasonable mind might accept it as adequate to support the Board's conclusion. The fact that Dr. Rushton had a different opinion does not alter that conclusion. The Board carefully evaluated the opinion testimony of both doctors and concluded that Dr. Newell's opinion made more sense in light of Lewis' medical treatment history and his far more extensive actual treatment experience with Lewis as her treatment provider. Thus, the Court concludes that the Board's decision was supported by substantial evidence. To find otherwise, as Elzufon asks,

---

[78] *Id.*
[79] *Id.*
[80] *Id.,* at 14.
[81] *Id.*
[82] *Id.*

would require the Court to step outside of its proper role and re-weigh the evidence, and make its own credibility determinations and factual findings.

## B. **The Statute of Limitations Did Not Bar Lewis' Petition**.

The Board based its denial of Elzufon's Motion to Dismiss on its reading of 19 *Del. C.* § 2361(b) which provides for a five-year statute of limitations in certain situations.[83] That section reads:

> (b) Where payments of compensation have been made in any case under an agreement approved by the Board or by an award of the Board, no statute of limitation shall take effect until the expiration of 5 years from the time of the making of the last payment for which a proper receipt has been filed with the Department.[84]

The Board held that the present petition, filed on April 1, 2021, was filed within five years of the date of injury of August 29, 2016.[85] Specifically, less than five years had elapsed since Lewis received her last disfigurement compensation payment related to that compensable accident under their agreement filed on July 29, 2019.[86] Given the Board's finding that the cervical spine injury was causally related to the compensable injury, as affirmed here, that holding is manifestly correct.

Alternatively, the Board held that this case is a "cumulative detrimental effect case" (based on the prior agreement of the parties) and that the initial two-year statute

---

[83] *Id.,* at 16.
[84] 19 *Del. C.* § 2361(b).
[85] *Delisa Lewis v. Elzufon, Austin, Tarlov, & Mondell, P.A.,* at 16.
[86] *Id.*

16

of limitations under 19 *Del. C.* § 2361(a) began to run from the date the "detrimental effect" manifested itself and Lewis, as a reasonable person, knew, or should have known it was related to employment.[87] Here, the Board determined that Lewis' present petition for additional cervical spine treatment was within two years of when she last saw her treating surgeon, Dr. Johnson, on January 8, 2020 and he assessed her with a cervical radiculopathy.[88] Furthermore, the present petition was filed within two years of when she received her diagnostic/therapeutic injections from Dr. Newell on April 8 and April 22, 2019.[89] It appears inferentially that the Board found that the results of Lewis' visit with Dr. Newell in March 2019 were insufficient to put her on notice that her cervical spine pain was related to her employment. That conclusion is reasonable in light of the fact that the purpose of the injections in April 2019 was at least partially diagnostic. Again, given that the Board's found causal connection between the compensable injury and the manifestation of the further detrimental effect related to Lewis' cervical spine injury, Elzufon's Motion to Dismiss was properly denied on this alternative basis as well.

## VI.    CONCLUSION

For the foregoing reasons, the Board's decision was supported by substantial evidence and was free from legal error. There was substantial evidence to support

---

[87] *Id.*
[88] *Id.,* at 16-17.
[89] *Id.,* at 17.

17

the Board's determination that Lewis' cervical spine injury was causally related to her compensable shoulder injury.  Further the Board's holding that the petition was not barred by the statute of limitations was free from legal error.  Therefore, the Board's decision is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

18