# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

WILLIAM W. WELLER,       )
                                           )
      Appellant,            )
                                           )
        v.                  )      C.A. No. N23A-03-007 FWW
                                         )
MORRIS JAMES LLP, and     )
UNEMPLOYMENT INSURANCE   )
APPEAL BOARD,        )
                                         )
      Appellees.          )

Submitted: August 25, 2023
Decided: November 30, 2023

## MEMORANDUM OPINION

*On Appeal from the Unemployment Insurance Appeal Board*
**AFFIRMED**

William W. Weller, *pro se*, 216 Oak Drive, Middletown, Delaware 19709, Appellant.

Jennifer C. Jauffret, Esquire, RICHARDS, LAYTON, & FINGER, P.A., 920 North King Street, Wilmington, Delaware 19801, Attorney for Appellee Morris James LLP.

Victoria W. Counihan, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, 820 North French Street, Wilmington, Delaware 19801, Attorney for Appellee Delaware Department of Labor, Division of Unemployment Insurance.

**WHARTON, J.**

# I.    INTRODUCTION.

This appeal is from a decision of the Unemployment Insurance Appeal Board ("UIAB") affirming an Appeals Referee's ("Referee") decision finding Appellant William W. Weller ("Weller") ineligible for unemployment benefits from September 17, 2022 to September 2, 2023.[1]  Weller and his former employer, the law firm Morris James, LLP ("Morris James") entered into a Separation Agreement and Release ("Agreement") on August 16, 2022, ending a nearly two decade employer/employee relationship.[2]   The Agreement required Morris James to pay Weller a lump sum of $94,450.00 ("Payment") in exchange for multiple promises from Weller.[3]   At the end of his employment, Weller filed a claim to receive unemployment benefits from the Division of Unemployment Insurance ("Division").[4]  A Claims Deputy denied his unemployment benefits claim, finding that the Payment, when pro-rated weekly, exceeded what he otherwise would have received in weekly unemployment benefits.[5]  The Referee affirmed the Claims Deputy's determination.[6]  In turn, the UIAB affirmed the Referee.[7]  On appeal,

---

[1] *Weller v. Morris James*, App. Docket No. 47115212 (UIAB Mar. 3, 2023), R. at 7.  (UIAB's Decision).
[2] Agreement, R. at 104.
[3] *Id.* at 104-105.
[4] Claims Deputy's Decision, R. at 118.
[5] *Id.*
[6] Referee's Decision, R. at 100-02.
[7] UIAB's Decision, R. at 9.

1

Weller argues that the Referee and the UIAB committed various legal errors warranting reversal. After carefully considering Weller's arguments, the Court disagrees. The UIAB's decision is **AFFIRMED.**

## II. FACTS AND PROCEDURAL HISTORY.

Weller was employed by Morris James as a paralegal for approximately 20 years from October 2002 to August 2022.[8] On August 16, 2022, Weller signed the Agreement requiring Morris James to pay him $94,450.00 in exchange for certain promises from Weller.[9] On September 11, 2022, he filed a claim to receive unemployment benefits.[10] A Claims Deputy determined that Weller was ineligible for unemployment benefits due to him receiving $94,450.00 in severance pay.[11]

Weller appealed and testified at his hearing before the Referee that the Agreement was not a severance agreement, but rather, an agreement settling a whistleblower claim related to a complaint he had filed with the Office of Disciplinary Counsel against a Morris James attorney.[12] In support of that argument, Weller attempted to introduce into the record an email labeled "Weller ODC" which the Referee declined to admit,[13] the Agreement which the Referee admitted,[14] and

---

[8] Appellant's Op. Br. at 3, D.I. 14.
[9] Agreement, R. at 104-105.
[10] R. at 113.
[11] Claims Deputy's Decision, R. at 118.
[12] Hr'g. Tr. (Dec. 21, 2022), R. 54-83, *passim*.
[13] *Id.* R. at 62.
[14] *Id.* R. at 69.

2

notes and a video from his meeting with Morris James which the Referee declined to admit.[15]

The UIAB affirmed the Referee's decision.[16] It first observed that Weller's principal dispute with the Referee's decision was his belief that the Payment should not be viewed as severance, and thus, not affect his eligibility for uninsurance benefits.[17] The UIAB was unpersuaded by Weller's two arguments in support of that belief – first, that Morris James did not contest his unemployment filing, and second, that Morris James intended the Payment to be a settlement of his whistleblower claim.[18] As to the first, the UIAB pointed out that only the Division and the UIAB are empowered to make eligibility determinations and that Morris James' position does not control that determination.[19] Similarly, as to the second, the UIAB did not find Morris James' motivation determinative of Weller's eligibility for benefits.[20] Rather, it found that the appropriate analysis was to apply the facts to Delaware law.[21]

---

[15] *Id.* R. at 70.
[16] UIAB's Decision, R. at 9.
[17] *Id.* R. at 8.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

When it performed that analysis, the UIAB found that the Payment was a severance.[22] It found that Morris James paid Weller the equivalent of one year's salary in connection with the termination of their employment relationship.[23] Citing 19 *Del. C.* § 3302(18), the UIAB pointed out that wages are defined as "'all remuneration for personal services, including commissions, bonuses, dismissal payments, holiday pay, back pay awards.'"[24] The UIAB "believe[d] that generally severance payments would be included in dismissal payments under § 3302(18)."[25] Therefore, while the Payment was part of a settlement agreement that included the resolution of other charges, the UIAB did not find that fact sufficient to take the Payment out of the definition of "wages."[26] In sum, the UIAB found that Morris James' payment of one year's salary was a payment of wages under § 3302(18).[27] Additionally, the UIAB found that a contrary result "would not serve the spirit of the unemployment insurance law because [Weller] was not placed into the same

---

[22] *Id.*
[23] *Id.*
[24] *Id.* (citing 19 *Del. C.* § 3302(18)).
[25] *Id.*
[26] *Id.*
[27] *Id.*

4

economic instability as a worker terminated without any such payment.[28] On March 10, 2023, Weller appealed the Board's decision to this Court.[29]

### III. THE PARTIES' CONTENTIONS.

Weller contends that the Board's decision was not free from legal error. It incorrectly affirmed the Referee who violated his due process rights by relying on a complete copy of the hearsay Separation Notice submitted by Morris James which was not provided to him prior the hearing.[30] It failed to reverse the Referee who denied him an opportunity to present certain relevant evidence consisting of a video of a Morris James Executive Committee meeting, his notes for that meeting, and the ODC email.[31] The Referee also improperly imposed an artificial hearing length and restricted Weller's right to present evidence.[32] The UIAB also committed legal error with respect to its findings concerning the intent of the Agreement.[33] Weller also takes issue with the UIAB's denial of unemployment benefits based on "public policy" and unemployment insurance law.[34] Finally, Weller contends that since the

---

[28] *Id*. at n. 3, R. 9 (quoting 19 *Del. C*. § 3301 "'As a guide to interpretation of this chapter, the public policy of this State is declared to be as follows: economic instability due to unemployment is a serious menace to the health, morals and welfare of the people of this State."')
[29] R. at 4.
[30] Appellant's Op. Br. at 12-14, D.I. 14.
[31] *Id.* at 15-17.
[32] *Id.*
[33] *Id.* at 17-20.
[34] *Id.* at 21-23.

Payment was a settlement, it does not fall under the Delaware Unemployment Code definition of "wages."[35]

The Division first argues that the decision of the UIAB was free of legal errors, supported by substantial evidence and that the UIAB acted within its discretion in affirming the Referee.[36]  In its view, the case is about the single issue of whether the Payment Weller received pursuant to the Agreement was a severance payment, and thus wages under 19 *Del. C.* § 3302(18), or a settlement payment for his whistleblower claim.[37]  The Division contends that the Referee looked at the "four-corners" of the Agreement and found it had no language plainly stating that it was a negotiated settlement of a whistleblower claim, but that it did refer to the payment of "wages."[38]   Further, because the total Payment of $94,450.00, apportioned over 52 weeks, resulted in an amount of $1,816.34 per week which exceeded his weekly benefit amount earnings allowance, he was ineligible for unemployment benefits from the week ending September 17, 2022 through the week ending September 2, 2023.[39]

The Division discounts Weller's other arguments.  First, the only relevant and substantive page of the Separation Notice was provided to Weller during the hearing

---

[35] *Id.* at 23-26.
[36] Division's Ans. Br. at 8-12, D.I. 20.
[37] *Id.* at 8-9.
[38] *Id.* at 10.
[39] *Id.*

and he was afforded adequate opportunity to review it and provide testimony.[40] Additionally, the Referee did not rely on the missing portions of the Separation Notice which contained no substantive information in any event.[41]  Second, Weller did not preserve for appeal his claim that the Separation Agreement was inadmissible hearsay because he failed to make that argument before both the Referee and the UIAB.[42]  Nevertheless, even if the Separation Notice was hearsay, according the Division, it was admissible either as a business record or because hearsay otherwise is admissible at administrative hearings as long as there is competent evidence supporting the administrative body's findings.[43]  Here, the Division argues the Agreement constituted such competent evidence.[44]  Third, the Referee properly declined to consider as irrelevant evidence outside the four corners of the Agreement and did not impose an unreasonable time limitation for the hearing.[45]  Fourth, it was not legal error for the Referee or the UIAB to refuse to consider Morris James' intent in entering into the Agreement, as the Agreement itself precluded such consideration.[46]  Fifth, Morris James' failure to attend the hearing was irrelevant since it was not a necessary party, nor did its consent to the payment of benefits

---

[40] *Id.* at 13.
[41] *Id.* at 14.
[42] *Id.* at 15.
[43] *Id.* at 16-17.
[44] *Id.* at 17.
[45] *Id.* at 17-20.
[46] *Id.* at 20-21.

divest the Division of its responsibility to make a determination of Weller's eligibility for benefits.[47]  Sixth, the UIAB did not err in taking into account public policy considerations.[48]  Lastly, the UIAB's finding that the Payment under the Agreement was severance pay constituting wages was correct.[49]

Morris James writes through counsel that although it does not necessarily agree with the facts as alleged by Weller, "Morris James does not contest Mr. Weller's receipt of unemployment benefits at such time as he is first eligible by law to receive such benefits and does not take any position in this Action."[50]  Similarly, the UIAB informed the Court that, as the tribunal below, it "does not have an interest in seeking to have its decision upheld on appeal."[51]

In his Reply Brief, Weller takes the position that Morris James' decision not to file an answering brief should be considered an admission as to the purpose of the Payment warranting reversal.[52]

## IV.  STANDARD OF REVIEW.

The UIAB's decision must be affirmed so long as it is supported by substantial evidence and is free from legal error.[53]  Substantial evidence is evidence that a

---

[47] *Id.* at 21.
[48] *Id.* at 21-22.
[49] *Id.* at 23-25.
[50] D.I. 19.
[51] D.I. 21.
[52] Appellant's Reply Br. at 3-5, D.I. 22.
[53] *Unemployment Ins. Appeal Bd. v. Duncan*, 337 A.2d 308, 309 (Del. 1975).

reasonable mind might accept as adequate to support a conclusion.[54]   While a preponderance of evidence is not necessary, substantial evidence means "more than a scintilla."[55]   Moreover, because the Court does not weigh evidence, determine questions of credibility, or make its own factual findings, it must uphold the decision of the UIAB unless the Court finds that the UIAB "act[ed] arbitrarily or capriciously" or its decision "exceed[ed] the bounds of reason."[56]  Questions of law are reviewed *de novo*.[57]

## V. DISCUSSION.

### A. Separation Agreement and Release.

The Court first looks at the Agreement because a proper understanding of it shapes the resolution of most, if not all, of the issues in this appeal.  The eight-page document is captioned "**SEPARATION AGREEMENT AND RELEASE**," and, although most of it appears to be boilerplate not pertinent to the issues on appeal, some paragraphs warrant the Court's attention.[58]  Morris James and Weller agreed that the termination of Weller's employment was deemed to be a resignation.[59]  In

---

[54] *Oceanport Indus. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[55]  *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[56] *PAL of Wilmington v. Graham*, 2008 WL 2582986, at *4 (Del. Super. June 18, 2008).

[57] *Ward v. Dep't of Elections*, 2009 WL 2244413, at *1 (Del. Super. July 27, 2009).

[58] Agreement, R. at 104-111.

[59] *Id.* at 104.

9

exchange for Weller's "release of all claims and for other promises contained in the Agreement" Morris James provided Weller with "additional consideration over and above that normally provided to employees who resign…" which additional consideration Weller accepted "for the release of all claims and for other promises contained in this Agreement."[60] The amount of "additional consideration" was not specified. In exchange for Weller's "release of any and all claims," Morris James agreed to pay Weller "one (1) year of wages at [Weller's] current salary" totaling $94,450.00 "in a lump sum payment, less required taxes and withholdings and standard deductions."[61] Because Weller received an amount:

> in excess of that which [Weller] would be entitled or eligible to receive and [Weller] is no longer employed by [Morris James], [Weller] is not and will not be entitled to nor will [Weller] accrue or receive any further salary, benefits, vacation pay, sick pay, paid personal leave, severance pay, incentive award payments, bonuses, wages in lieu of notice, expense reimbursement or similar payment or any other form of compensation from [Morris James].[62]

As with the amount of "additional consideration" Weller received, the Agreement was silent as to the amount of other compensation he would not receive.

In exchange for receiving $94,450.00, Weller agreed to release Morris James from "all claims, liabilities, demands and causes of action, known or unknown, fixed

---

[60] *Id.*
[61] *Id.* ⁋ 1.a., at 104-05.
[62] *Id.* ⁋ 2, at 105.

or contingent, sounding in contract or tort or otherwise…arising out of or related to any matter, event, fact, act, omission, cause or thing which existed, arose or occurred prior to [Weller's] signing of this Agreement."[63]  The Agreement included lengthy, non-exclusive lists of specific types of claims Weller agreed to waive and release.[64] Specifically listed were claims under the Delaware Whistleblower's Act.[65]  Claims not released were claims for worker's compensation, unemployment, future COBRA benefits or other claims that could not be released by law.[66]  Further, Weller agreed to "immediately withdraw or dismiss" any pending charge or complaint except unemployment or "State of Delaware Office of Disciplinary Counsel ("ODC") claims."[67]

Finally, the Agreement contained an integration clause.  It reads: "This Agreement contains all of the understandings and agreements between [Weller] and [Morris James] regarding the subject matter hereof, and supersedes all other negotiations and understandings, written or oral."[68]

## B. Weller's Due Process Claims.

---

[63] *Id.* ⁋ 3, at 105.
[64] *Id.* at 106.
[65] *Id.*
[66] *Id.*
[67] *Id.*
[68] *Id.* ⁋ 13, at 111.

Weller argues that his due process rights were violated when the UIAB failed to correct the Referee's errors in: (1) relying on Morris James completed Separation Notice; and (2) relying on hearsay evidence. As to the first, to the extent Weller claims that the Referee relied on all of the pages of the Separation Notice, he is factually wrong. As to the second, he is legally wrong.

Weller claims that he did not receive a complete copy of the Separation Notice until his receipt of the Record which was after the hearing before the Referee and after the UIAB's decision.[69] He contends this violated his due process rights in two ways – first, because it deprived him of an opportunity to prepare for the hearing before the Referee, and second because the Referee relied on the "faulty" Separation Notice. A close look at the Record reveals that there is no merit to Weller's arguments.

At the hearing before the Referee, it appears that the Referee admitted as "A #1" one page of the Separation Notice submitted to the Division by Carol Folt, Human Resources Manager at Morris James.[70] Only two entries on that page are significant. A box marked "Voluntary Quit/Separation" is checked and there is an entry marked "Severance Pay" from September 1, 2022 to August 31, 2023 in the amount of $94,450.00.[71] The exhibit contains markings identifying it as page two

---

[69] Appellant's Op. Br. at 13, D.I. 14.
[70] R. at 112.
[71] *Id.*

of a five page document (0002/0005), faxed by Morris James on September 18, 2022 at 12:21 p.m.[72] Although Weller stated that he had not seen the document before the hearing, he did not object to its admission.[73]

Three other pages of the faxed document, bearing the same time and date stamp, also appear in the Record without any explanation why or when they were included.[74] Those pages consist of a fax cover sheet (0001/0005),[75] a page where "Medical Separation," "Reduced Hour Claims," and "Labor Dispute/Strike/Lockout/Stoppage of Work" all are marked "N/A" (0003/0005),[76] and a blank page (0005/0005).[77] Although it is unknown from the record what, if anything, was contained on page four, it is clear that pages 1, 3, and 5 contain no relevant information. The Court is unpersuaded Weller's due process rights were infringed by the untimely, partial disclosure of the Separation Notice. He consented to the admission of Exhibit "A #1," thereby waiving any objection to the timeliness of its production. He has failed to establish that any of the missing pages of the Separation Notice contained any material information. He has failed to show that either the Referee or the UIAB relied in any way on the missing pages in reaching

---

[72] *Id.*
[73] Hr'g. Tr. (Dec. 21, 2022), R. at 50.
[74] R. at 122-24. Several pre-hearing emails between Weller and the Referee were also included in the Record without explanation. R. at 128-33.
[75] *Id.* at 122.
[76] *Id.* at 123.
[77] *Id.* at 124.

their decisions.  Despite his assertion that earlier production would have allowed him to call Carol Folt as a witness, he has failed to demonstrate how her testimony would have helped him.  In sum, Weller has failed to show any prejudice.

Next, Weller's claim that it was error for the Referee to rely upon the incomplete Separation Notice because it was hearsay is legally wrong.  First, Weller waived his right to complain about the admission of the Separation Notice on hearsay grounds by failing to object at the hearing.[78]  Second, the Delaware Uniform Rules of Evidence apply to "all actions and proceedings in all the courts of this State."[79]  The UIAB is not a court.  Third, "Hearsay evidence is permissible as long as there is competent evidence having probative value to support the findings" of the administrative body.[80]  Here, the Agreement was competent evidence to support the Referee's conclusion.[81]

## C. Weller's Evidentiary and Procedural Claims.

Weller contends that it was error for the Referee to exclude from evidence: (1) a video of a remote call between himself and the Morris James Executive Committee with respect to his whistleblower claims; (2)  his talking points for the Executive Committee; and (3) an Office of Disciplinary Council email confirming

---

[78] *See Connell v. New Castle County,* 2000 WL 707105, at *3 (Del. Super. Ct. Mar. 23, 2000).

[79] D.R.E 1101(a).

[80] *Connell,* 2000 WL 707105, at *3.

[81] Referee's Decision, R. at 101.

that he had filed an ethics complaint.[82]  All of these claims relate to Weller's contention that the Agreement was intended to be a settlement of his whistleblower claim.  In other words, he contends that the proffered exhibits would shed light on the understandings, negotiations, and agreements he had with Morris James regarding the Agreement.

The Agreement expressly precludes consideration of parol evidence. Paragraph 13 states that the "Agreement contains all of the understandings, and agreements between [Weller] and [Morris James] regarding the subject matter hereof, and supersedes *all* earlier negotiations and understandings, written or oral."[83] When he signed the Agreement, Weller agreed that he "has not relied upon any representations, promises or statements, oral or written, that are not set forth in this Agreement."[84]  He understood that the only source of divining the parties intentions was the agreement itself.  If he had wanted the Agreement to be interpreted as an agreement to settle his whistleblower claim, he should have negotiated specific language to that effect.  The Referee properly confined her analysis to the four corners of the Agreement and excluded the irrelevant proffered evidence.

Weller next contends that the Referee's limitation of the hearing to 45 minutes improperly restricted his ability to present evidence.  The short answer to this claim

---

[82] Appellant's Op. Br. at 15-16, D.I. 14.
[83] Agreement, ℙ 13, R. at 111 (emphasis added).
[84] *Id.* ℙ 14, R. at 111.

is that Weller intended to use additional time to present evidence that the Referee properly excluded.[85] Not only has Weller failed to identify what additional admissible evidence he was precluded from presenting, but when asked by the Referee if he had anything else to present, he said, "No, I do not."[86]

### D. Weller's Claim Regarding the Intent of the Separation Agreement.

As noted, Weller and Morris James contractually agreed that the Agreement contains all of the agreements and understandings between them. Thus, the intent of the Agreement, or more properly, the intent of the parties, is confined to its four corners. Within those four corners, a number of things are plain to the Court. First, Weller received some unknown amount of compensation over and above what he normally would have received if he merely had resigned from Morris James. Second, in exchange for that extra compensation, Weller waived and released any claims of any sort against Morris James, including any potential whistleblower claim. Third, Weller also agreed he was not entitled to any other compensation from Morris James such as sick pay, unused vacation pay, bonus pay, and the like. Fourth, the amount of additional compensation Weller received and the amount of potential compensation he waived are unknown. Fifth, the Agreement did not state specifically that it was intended to resolve any particular claim, including Weller's

---

[85] Appellant's Op. Br. at 15-16, D.I. 14.
[86] Hr'g. Tr. (Dec. 21, 2022), R. at 84.

16

whistleblower claim. Sixth, the parties agreed that the compensation Weller received would be characterized as "wages" – Morris James agreed to "[p]rovide one (1) year of wages at [Weller's] current salary of Ninety Four Thousand Four hundred Fifty and 00/100 Dollars ($94,450.00), in a lump sum payment, less required taxes and withholdings and standard deductions…"[87]

The fact is Weller elected to resolve whatever claims he had against Morris James by accepting $94,450.00 in "wages." Further evidence, beyond the use of the word "wages," that the parties intended the payment as wages is that the payment was reduced by the "required taxes and withholdings and standard deductions." Defendants in civil suits are not required to deduct taxes, withholdings, and standard deductions from damages awards or settlements paid to plaintiffs. It was not error for either the Referee or the UIAB to find that the $94,450.00 paid to Weller by Morris James was severance pay.

### E. Weller's Public Policy Claim.

Weller also argues that it was a legal error for the Board to support its decision by finding that granting him unemployment insurance benefits would be contrary to "public policy" and unemployment insurance law.[88] The particular finding to which Weller objects is found at the end of the UIAB's decision.[89] It reads:

---

[87] Agreement, R. at 104-05.
[88] Appellant's Op. Br. at 21, D.I. 14.
[89] UIAB's Decision, R. at 9.

17

Additionally, the Board finds that allowing [Weller] to receive the equivalent of one year salary would not serve the spirit of the unemployment insurance law because [Weller] was not placed into the same economic instability as a worker who is terminated without any such payment. The board believes that this further supports its decision to find [Weller] ineligible for unemployment benefits from September 17, 2022 to September 2, 2023.[90]

The interpretation and application of the Delaware Unemployment Code is guided by 19 *Del. C.* § 3301. It states, "the public policy of this State is declared to be as follows: economic insecurity due to unemployment is a menace to the health, morals and welfare of the people of this State."[91] The Payment, when pro-rated weekly, exceeded the weekly unemployment benefits that Weller would have received. Therefore, Weller was not economically insecure from September 17, 2022, through September 2, 2023.

There was no error in the UIAB buttressing its decision with public policy considerations. Weller makes no argument that receiving severance pay and unemployment benefits simultaneously would be consistent with public policy. Rather, he cites irrelevant authority that it would be improper for the UIAB to deny him unemployment benefits because he received a settlement based on a statute

---

[90] *Id.* (internal citation omitted).
[91] 19 *Del. C.* § 3301.

18

intended to punish employers.[92]  Thus, his argument is predicated on a claim the Court rejects – that the Payment was not wages.

Even if Weller were correct that the UIAB erred in its application of public policy, such an error would not warrant reversal.  The public policy finding merely was in addition to, and in further support of, its earlier stated determination that the Payment met the statutory definition of wages.[93]

### F. Weller's Claim that the UIAB Erred in Finding that the Payment was "Wages."

Weller challenges the UIAB's holding that the Payment was a severance payment, meeting the Delaware Unemployment Code definition of "wages."[94]  This argument simply rehashes his contentions that the UIAB relied on a faulty and incomplete Separation Notice, and that the Payment was a settlement payment for his whistleblower claim.[95]  Not only has the Court already found those arguments unpersuasive, but they ignore the plain language of the Agreement characterizing the Payment as "wages."

### G. Weller's Claim Regarding Morris James' Failure to File Answering Brief.

---

[92] Appellant's Op. Br. at 21-23, D.I. 14.
[93] UIAB's Decision, R. at 8-9.
[94] Appellant's Op. Br. at 23-27, D.I. 14.
[95] *Id.*

Weller argues in his Reply Brief that Morris James' decision not to file an answering brief should be deemed an admission to all of his averments in his Opening Brief, requiring reversal of the UIAB's decision pursuant to Superior Court Civil Rule 107(e).[96] The Court disagrees. Morris James' decision not to participate in this appeal has no bearing on whether the UIAB's decision was free from legal error and supported by substantial evidence. By virtue of the integration language in the Agreement, parol evidence is irrelevant to understanding its meaning. It makes no difference whether that parol evidence is in the form of an affirmative assertion by Weller or a default by Morris James. Further, there was an Answering Brief filed by the Division, making Rule 107(e) inapplicable. A contrary decision would produce the anomalous result of penalizing one appellee, the Division, which did file an Answering Brief, because another appellee, Morris-James, did not.

## VI. CONCLUSION.

For the reasons set out above, the Court concludes that the UIAB's decision is supported by substantial evidence and is free from legal error. Therefore, the decision of the Unemployment Insurance Appeal Board is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Ferris W. Wharton
Ferris W. Wharton, J.

---

[96] Appellant's Reply Br. at 3, D.I. 22.