Anthony F. TALMO, Plaintiff,

v.

NEW CASTLE COUNTY, Defendant.

Civ. A. No. 81A–MR–22.

Superior Court of Delaware,
New Castle County.

Submitted Jan. 14, 1982.

Decided April 2, 1982.

Harvey B. Rubenstein, Wilmington, for plaintiff.

B. Wilson Redfearn and Colin M. Shalk (argued) of Tybout, Redfearn, Casarino & Pell, Wilmington, for defendant.

LONGOBARDI, Judge.

This is an appeal from the decision of the Industrial Accident Board ("Board") denying Claimant's petition for compensation benefits. The Board found that the Claimant, Anthony F. Talmo, suffered a myocardial infarction on July 17, 1980, while lifting a manhole cover. Although the Claimant can fix the time and place of the heart attack while in the employ of New Castle County, the Board found that the myocardial infarction suffered by Claimant at that time was the result of an insidious disease. The Board also found that no unusual exertion was present at the time of the "accident" since it was clearly within Mr. Talmo's duties to lift manhole covers with the help of a fellow employee.

██ The duty of this Court on an appeal from the Industrial Accident Board or any administrative body is to determine whether the agency committed an error of law or made findings of fact unsupported by substantial evidence. *Olney v. Cooch*, Del. Supr., 425 A.2d 610 (1981).

The record reveals the following facts: Anthony F. Talmo had been employed with New Castle County Department of Public Works as a maintenance and construction worker since November, 1972. From the beginning of this employment, the Claimant's supervisor made every effort to give Mr. Talmo easier work within his job classification due to his age and weight. At the time of the accident, one of Claimant's everyday job duties included lifting manhole covers with a fellow employee by putting a pick into it, raising it a few inches and sliding it to the side for resealing and then replacing it. Mr. Talmo testified that he would average one hundred manhole cover pick-ups per week.

Dr. Constantine W. Michell, Claimant's treating physician, testified that Claimant started complaining of chest pain in October, 1979. Dr. Michell prescribed a nitroglycerine type of medication three times a day and advised Mr. Talmo to go on light duty. Mr. Talmo did not want to go on light duty for fear of losing time so never requested it. On July 15, 1980, Claimant went to Dr. Michell for knee problems and also advised him of a recurrence of chest pains. Dr. Michell increased Mr. Talmo's nitroglycerine type of medication to four times a day and told him to return on July 17, 1980, for a re-examination.

On July 17, 1980, the day Mr. Talmo was to see Dr. Michell, he was at work lifting the second manhole cover that morning when he felt a "sharp pain from the front to the back" in his chest. He helped replace the cover and then went to the Medical Division and told the nurse about the pain and that he was going to see his doctor. Upon seeing Dr. Michell that same day, he was hospitalized. Mr. Talmo remained hospitalized until August 29, 1980, with a final diagnosis at discharge of "acute myocardial infarction." This pathology involves the progressive narrowing of the blood vessels of the heart causing the heart to be deprived of its normal supply of oxygen. Since this heart attack, Mr. Talmo has been unable to return to work.

Dr. Michell testified that the lifting of the manhole cover was the most proximal activity to the Claimant's pain and would have or could have precipitated the infarction. He later added that he was not sure that an infarction was not occurring on July 15th or even before and that the precipitating factor of lifting a manhole cover could have reinfarcted or extended the infarction. While hospitalized for the myocardial infarction, it was diagnosed that Claimant had carcinoma resulting in a blood loss and causing the Claimant to become anemic. These factors, together with Claimant's diabetes, age and weight, contributed to the narrowing of the heart's blood vessel and ultimate decrease in oxygen supply to the heart. Dr. Michell testified that the lifting of the manhole cover required an extra oxygen supply but because of the above factors and conditions of the vessels, the heart was incapable of getting this necessary oxygen. Dr. Michell added that given Claimant's condition, the myocardial infarction was inevitable with any type of exertion.

The Board accepted the videotaped testimony of Dr. Anthony Lombardi who never examined the Claimant but reviewed his medical file. Dr. Lombardi concluded that Claimant had a cardiac disease prior to the date of the myocardial infarction and that based on the angina pain pattern, a heart attack was inevitable.

The Claimant's major argument on appeal is that the Board's express findings are inconsistent with its denial of benefits. The Claimant maintains that the Board could not deny an award when it expressly found that the physical activity of lifting the manhole cover on July 17, 1980, triggered the heart attack.

The principal case upon which Claimant relies is *Chicago Bridge & Iron Co. v. Walker*, Del.Supr., 372 A.2d 185, 187 (1977), in which the Supreme Court identified four of the principal concepts or legal theories which support an award of workman's compensation benefits. Briefly, the Supreme Court stated that a claimant is entitled to an award when:

> (1) He proves that "the injury happened at a fixed time and place and was attributable to a clearly traceable incident of ... [his] employment";
> (2) He proves that "unusual exertion" in the course of his employment aggravated a preexisting physical weakness;
> (3) He proves that he sustained a "compensable occupational disease" as defined in § 2301(4);
> (4) He proves that his work has had a cumulative detrimental effect on his physical condition.

*Chicago Bridge & Iron Co. v. Walker, supra,* (citations omitted). Of these four legal theories, the Delaware Supreme Court has repeatedly held in an infarction type heart case, the "unusual exertion" theory (the second theory listed above) is applicable.[1] Unless and until "unusual exertion" in Claimant's performance of his ordinary work duties is shown, compensation is not allowable by law in an infarction type heart case. *Willis v. New Castle County*, Del. Supr., 371 A.2d 1072 (1976); *Reynolds v. Continental Can Company*, Del.Supr., 240 A.2d 135 (1968); *Faline v. Guido and Francis DeAscanis & Sons*, Del.Supr., 192 A.2d 921 (1963). The mere fixing of the time and place of the infarction while at work does not alone make it compensable.

Unquestionably, while lifting the manhole cover on July 17, 1980, Claimant experienced a sharp chest pain that was later diagnosed as acute myocardial infarction. This lifting would have or could have precipitated the infarction. All of the evidence indicates, however, that the act of lifting and moving manhole covers was part of the Claimant's routine in the performance of his work duties. The Claimant himself admits moving these covers on the average of one hundred times per week. The Supreme Court in *General Motors Corp. v. Veasey*, Del.Supr., 371 A.2d 1074, 1076 (1977) held:

> ... that in order to implement the "unusual exertion" test and carry out its intended purpose of assuring that it was the claimant's employment which was a "substantial cause" of his injury, the proper reference must be the employee's particular occupational duties. This means that, in order to meet the "unusual exertion" test, the claimant must show that his exertion was beyond that ordinarily required for the performance of his duties.

Claimant's only showing of "unusual exertion" was that the County usually tried to give Claimant easy assignments because of his age and weight. There is absolutely no evidence that Claimant's "exertion was beyond that ordinarily required for the performance of his duties." *Id.* The lifting of the manhole cover was part of Claimant's ordinary work duties. The fact that the County knew that the Claimant was older than most other employees and was overweight and tried to give him easier assignments does not change the fact that moving

---

1. By its very meaning, an infarction type heart case indicates a pre-existing physical weakness.

manhole covers was one of his routine assignments.

Subsequent to oral argument, Claimant referred the Court to a Supreme Court case decided the day after oral argument. *Petera and Son Oil Company, et al. v. Moore*, Del.Supr., 442 A.2d 75 (J. McNeilly 1982), deals with a truck driver who, while lifting a truck cab covered with snow and slush, aggravated his preexisting heart disease and suffered an acute coronary insufficiency (ACI). Both parties agree that the crucial issue having any relevance to the present case, *i.e.*, whether the lifting constituted "unusual exertion" within the meaning of *Veasey*, was not reached by the Supreme Court because the appellant/employer conceded in that case that issue at oral argument.

■ After a review of the record, the Court is satisfied that there is substantial evidence to support the Board's conclusion that Claimant's injury was not the result of an "unusual exertion." The decision is, therefore, affirmed.

■ The Claimant lastly argues that the Claimant's work had a cumulative detrimental effect on Claimant's physical condition (the fourth theory listed in *Chicago Bridge & Iron Co. v. Walker, supra*). The Claimant did not raise this argument before the Board and, in fact, in his closing statement his attorney conceded: "And while the nature of Mr. Talmo's work doesn't quicken the progression of the heart disease—in other words, it doesn't really have an effect on the heart disease—it is a trigger or a precipitation of the myocardial infarction itself." (T82–83). Even if this argument had been made before the Board, a review of the record clearly indicates that there was no testimony that Claimant's work had a cumulative detrimental effect on his physical condition. Accordingly, the decision of the Board is affirmed.

IT IS SO ORDERED.