# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| JOAN TRINCIA, | ) |
| | ) |
| Claimant-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| DICK'S SPORTING GOODS, | ) C.A. No. N23A-03-006 MMJ |
| | ) |
| Employer-Appellee. | ) |
| | ) |
| | ) |

Submitted: February 1, 2024
Decided: March 14, 2024

Upon Appeal from a Decision of the Industrial Accident Board.

**AFFIRMED**

Emily Laursen Raisis, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill, P.A., Christiana, Delaware, Attorney for Claimant-Appellant.

Maria Paris Newill, Esquire, Heckler & Frabizzio, Wilmington, DE, Attorney for Employer-Appellee.

**JOHNSTON, J.**

## MEMORANDUM OPINION

Joan Trincia ("Claimant") has appealed the Industrial Accident Board ("Board")'s January 20, 2023 decision denying Claimant's Petition for Compensation Due. Claimant asserts that she was injured on September 23, 2020, while she was an employee of Dick's Sporting Goods ("Employer" or "Dick's"). The Board held a hearing regarding a motion to strike Employer's expert testimony on Claimant's previous medical records. Claimant's expert did not get the opportunity to testify during the January 19, 2023 hearing ("Hearing"). The Hearing Officer concluded that Employer performed its due diligence in obtaining Claimant's past medical records and the fact that Claimant and Claimant's expert doctor did not have the records was not Employer's fault. On February 10, 2023, Claimant filed a Notice of Appeal with this Court. Claimant asserts that the Board's decision is an error of law, prejudicial, and should be reversed in favor of Claimant. Employer request that the Court affirm the Board's decision, since it is sufficiently supported in fact, and free of legal error.

## FACTS AND PROCEDURAL CONTEXT

On September 23, 2020, Claimant suffered a work accident at Dick's Sporting Goods lifting a heavy box. The Board considered several issues: (a) whether the alleged September 23, 2020 work accident occurred; (b) whether the

2

alleged work accident resulted in an injury to, or aggravation and/or exacerbating injury of, Claimant's cervical spine; (c) whether the treatment for the cervical spine, including cervical fusion, was reasonable, necessary, and causally related to the September 23, 2020 work accident; (d) whether the alleged work accident on September 23, 2020 resulted in an injury to, or aggravation and/or exacerbating injury of, Claimant's left shoulder; (e) whether the treatment to date for the left shoulder was reasonable, necessary, and causally related to the September 23, 2020 work accident; (f) whether claimant is entitled to partial disability for the period of October 21, 2020 through November 18, 2021; and (g) whether an implied agreement as to compensation existed.[1]

On September 20, 2022, Claimant filed a Petition to Determine Compensation Due with the Industrial Accident Board. Claimant alleged that injuries to her cervical spine and left shoulder resulted from a work-related injury that happened on September 23, 2020. A hearing on the merits was scheduled to take place on January 20, 2023. On January 16, 2023, Claimant's primary care physician produced Claimant's medical records dated before the stipulated accident date. The next day, January 17, 2023, Employer's expert, Dr. Schwartz, testified to the newly-produced records. On January 18, 2023, Claimant filed an

---

[1] Industrial Accident Board Decision on Petition to Determine Compensation Due at 2.

3

emergency motion seeking to strike portions of Dr. Schwartz's testimony or to continue the hearing to allow Claimant's medical expert to offer additional testimony. On January 19, 2023, Claimant's motion was heard, and the Hearing Officer denied Claimant's motion, concluding that Employer reasonably obtained the records, timely produced the records, and is not at fault for the fact that Claimant and Claimant's expert did not have the records. On January 20, 2023, the Board denied Claimant's Petition for Compensation Due in its entirety and ruled that Claimant was not credible and failed to meet her evidentiary burden.

On February 10, 2023, Claimant appealed to the Superior Court the Board's January 19, 2023 legal decision and January 20, 2023 merits decision.

Some of the findings of the January 20, 2023 decision denying Claimant's petition are as follows:

- Employer offered testimony of the adjuster assigned to Claimant's claim to rebut Claimant's evidence of implied agreement.[2] The adjuster made many unsuccessful attempts to investigate the claim and issued a notice letter denying the claim on December 18, 2020.[3] Additionally, Claimant did not make any other payments on the claim before or after January 2021.[4] These actions, by

---

[2] *Id.* at 35.
[3] *Id.*
[4] *Id.*

the adjustor and Claimant, explain how the November 12, 2020 notice letter and January 2021 medical payments were issued by mistake.[5] The Board found that the mistakes by Gallagher Bassett in processing the claim and paying the medical bills were careless or negligent, but did not find they were done as a result of compulsion by the Delaware Workers' Compensation Act.[6]

- Claimant failed to prove by a preponderance of the evidence that she injured herself at work on September 23, 2020 after a consideration of multiple factors.[7] First, Claimant delayed reporting the accident to the Employer and admitted that she did not tell anyone at work about the accident.[8] Claimant continued to work for two more weeks after the accident. Claimant asked to be taken off the work schedule at the end of her shift on October 14, 2020.[9] Claimant did not report a work accident or injury but instead told her manager that she did not feel well and lacked energy.[10] Second, Claimant's manager testified that Claimant worked her normal hours between September 23, 2020 and October 14, 2020.[11] Claimant did not tell the manager about an alleged work injury until she called him in November 2020, which correlates with the

---

[5] *Id.*
[6] *Id.*
[7] *Id.* at 37.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.* at 37–38.

date on the first report of injury submitted to Gallagher Bassett.[12] Claimant's primary job was to fold the clothes that were brought to her in boxes.[13] Other workers were available to lift the heavy boxes for her.[14] Third, the initial medical records from Drs. Ivins, Galinat, and Rowlands for treatment after the alleged September 23, 2020 work accident did not document a work accident or injury.[15] The records were changed later by the providers to include a reference to the work accident. However, the changes by Drs. Ivins and Rowlands were not dated and none of the providers who actually made changes to their records testified about the circumstances that led them to do so.[16] Finally, the evidence of pre-existing degenerative problems in Claimant's left shoulder and cervical spine suggested that Claimant was symptomatic before the alleged accident at work or her symptoms worsened for reasons unrelated to any trauma at work.[17]

- The Board found Dr. Schwartz's testimony persuasive. Dr. Schwartz acknowledged that he initially concluded Claimant had aggravated her pre-existing left shoulder condition in the alleged September 23, 2020 accident.[18]

---

[12] *Id.* at 38.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.* at 39.

Dr. Schwartz changed his opinion, after reviewing a more complete set of records prior to the hearing.[19]

- Claimant's credibility was questioned. The changes made to the treating physicians' records, regarding the accident, caused concern about the accident.[20] Additionally, Claimant failed to provide timely and accurate information about her claim to the insurance adjuster.[21] Claimant never provided a credible explanation as to why the first report of injury specified an accident date of October 7, 2020 and not September 23, 2020, the date Claimant claims is the accident date.[22]

## CLAIMANT'S GROUNDS FOR APPEAL

Claimant asserts that the Board abused its discretion in admitting Claimant's pre-existing medical records into evidence after the trial deposition of Claimant's expert.[23] Claimant asserts this creates significant prejudice for the Claimant whose expert was not afforded an opportunity to comment on the records.[24]

---

[19] *Id.*
[20] *Id.* at 40.
[21] *Id.*
[22] *Id.*
[23] Employee-Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decisions at 8.
[24] *Id.*

Claimant relies on *Lopez v. Method Hospitality PB, Inc.*,[25] in asserting that the Board prejudiced Claimant by their decision. Claimant asserts that *Lopez* provides the standard to apply when pertinent documents are produced less than thirty days prior to a hearing—"whether the production is unduly prejudicial to the party who received the documents late."[26] Claimant relies on the Board's decision in *Lopez* to weigh the fault and harm to the respective parties.[27]

Claimant asserts that in *Lopez*, the Board considered multiple factors in concluding that the fault and harm weighed more towards Method Hospitality PB, Inc., the employer in the case. The factors that the Board considered included: (1) Lopez was compliant by attending the defense medical examination at the request of his Employer and had agreed to continuance to accommodate the anticipated timeline of Dr. Rushton's report; (2) Lopez was completely without fault; and (3) the Employer voluntarily chose Dr. Rushton as its expert despite knowing ahead of time that Dr. Rushton would take several weeks to prepare his report.[28] The Board in *Lopez* found that Method Hospitality PB, Inc. was at fault and allowing Dr.

---

[25] *Lopez v. Method Hospitality PB, Inc.*, IAB Hearing No. 1532370 (July 6, 2023).
[26] Employee-Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decisions at 10.
[27] *Id.* at 11.
[28] *Id.*

Rushton's testimony would have caused prejudicial harm to Lopez.[29] The Board struck the entirety of Dr. Rushton's opinion and preclude his testimony.[30]

Claimant argues that allowing pre-existing medical reports of Claimant, produced after the trial deposition of Claimant's medical expert, would be prejudicial because Claimant's expert did not get the opportunity to comment on the report. Claimant contends that neither Claimant nor Employer bear any fault for Dr. Ivins, Claimant's primary care physician, producing Claimant's pre-existing medical reports late.[31] Claimant asserts that Dr. Ivins was neither identified nor retained as a medical expert by either party.[32] Claimant complied with Board Rules and Statutes identifying providers from whom she had sought medical care in the years preceding the work incident.[33] Claimant signed medical authorizations giving Employer the ability to subpoena her medical records in preparation for their case.[34] Employer subpoenaed Claimant's medical records, which were produced.[35] Claimant asserts that her case differs from *Lopez* in that no parties are at fault; therefore, no party should be prejudiced when there are

[29] *Lopez*, IAB Hearing No. 1532370 at *4 (July 6, 2023).
[30] *Id.*
[31] Employee-Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decisions at 11.
[32] *Id.*
[33] *Id.* at 11–12.
[34] *Id.* at 12.
[35] *Id.*

alternatives that could minimize the prejudice.[36] Claimant argues that she should have been afforded the same opportunity Employer had to have her expert comment on her records, which the Board could have done by allowing a brief continuance of the hearing.[37]

Claimant also cites to *Parke v. Sunrise Assisted Living, Inc.*[38] in discussing whether Claimant could not be surprised by her medical records. Claimant contends that the distinction between *Parke* and her case is the fact that both medical experts in *Parke* had been deposed prior to the production of the MRI. Whereas in Claimant's case, Claimant's medical expert testified eleven days before the additional Dr. Ivins records were produced, and Employer's medical expert testified a day after the records were produced.[39] Claimant asserts that this gave Employer's medical expert the opportunity the comment on the records while Claimant's medical expert did not have that same opportunity.[40] Claimant recognizes that the Court in *Parke* held that Claimant could not be surprised by her own medical records.[41] However, Claimant asserts that she was not surprised by the existence of her medical records but rather what was contained in them.[42]

---

[36] *Id.*
[37] *Id.*
[38] 2005 WL 268044 (Del. Super. Ct. 2005), *aff'd*, 878 A.2d 461 (Del. 2005).
[39] *Id.* at 14.
[40] *Id.* at 14–15.
[41] *Id.* at 15.
[42] *Id.*

Claimant argues that Claimant had no reason to believe the pre-existing medical records would have any relevance to the case.[43] Claimant had never experienced or reported neck pain to Dr. Ivins, and to the best of her knowledge, Dr. Ivins never diagnosed Claimant with a neck problem prior to her work injury.[44]

Claimant asserts that the timing of the production of Claimant's pre-existing medical records by Dr. Ivins failed to afford an equal opportunity for Claimant's medical expert to review and comment on them, creating unfair prejudice.[45]

## EMPLOYER'S RESPONSE

Employer asserts two things: (1) there is substantial evidence to support the Board's finding that Claimant failed to prove that she injured herself at work on September 23, 2020; and (2) the Board did not abuse their discretion in admitting the Claimant's pre-existing medical records.[46]

First, Employer argues that Claimant provides inconsistent reports of the alleged date of accident.[47] Claimant was not sure when she actually reported the accident.[48] Employer asserts that Claimant could not keep her story straight, while

---

[43] *Id.* at 17–18.
[44] *Id.* at 18.
[45] *Id.* at 17.
[46] Employer-Appellee's Answering Brief at 24.
[47] *Id.* at 29.
[48] *Id.*

11

Employer has dated records to show when Claimant filed an injury report.[49] Employer further asserts that Claimant did not tell anyone about her injury prior to the documented November 5, 2020 report to her manager.[50] Claimant explained to her manager that she wanted time off not due to a work injury but because she lacked energy.[51] Claimant also explained to her coworker that she was leaving work because she was sick and not because she was injured.[52] Additionally, Claimant continued to work her normal parttime schedule between September 23, 2020 and October 14, 2020.[53] Employer asserts that the Board also took note of Claimant manager's testimony that Claimant's job did not entail lifting boxes and that there were strong people with whom Claimant worked who could lift the box for her.[54] Employer asserts the Board was concerned about the credibility of the Claimant.[55]

Second, Employer contends that this case is different from *Lopez* because Claimant was at fault.[56] Claimant failed to timely obtain and produce Claimant's pre-existing medical records to adequately prepare Claimant's expert.[57] Employer

---

[49] *Id.*
[50] *Id.*
[51] *Id.* at 30.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] *Id.*
[56] *Id.* at 25.
[57] *Id.*

asserts that the reason why the Board found that the claimant was prejudiced in *Lopez* was because the defense medical expert's report was in the sole possession of the Employer.[58] In *Lopez,* there was no way the claimant would have been able to know what was in the expert's report without reviewing it.[59] Employer argues that this case is different because Claimant's pre-existing medical records always were available to the Claimant.[60] Employer asserts that under *Parke* it does not matter when medical records are produced to the claimant.[61] The legal takeaway from *Parke* is a claimant cannot authentically claim to be surprised by their own medical records.[62]

## STANDARD OF REVIEW

In reviewing the decisions of the Board,[63] this Court must determine whether the finding and conclusions of the Board are free from legal error and supported by substantial evidence in the record.[64] The function of the reviewing Court is to determine whether the agency's decision is supported by substantial evidence.[65]

---

[58] *Id.* at 26.
[59] *Id.*
[60] *Id.*
[61] *Id.* at 28.
[62] *Id.*
[63] Pursuant to 19 *Del. C.* § 2301B(a)(6), all references to the Board also refer to the Hearing Officer.
[64] *General Motors Corp. v. Jarrell*, 493 A.2d 978, 980 (Del. Super. 1985); *Talmo v. New Castle County*, 444 A.2d 298, 299 (Del. Super. 1982), *aff'd*, 454 A.2d 758 (Del. 1982).
[65] *General Motors v. Freeman*, 164 A.2d 686, 688 (Del. 1960); *Johnson v. Chrysler Corporation*, 213 A.2d 64, 66–67 (Del. 1965).

13

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[66] Substantial evidence is more than a scintilla, but less than a preponderance of the evidence.[67] The appellate court merely determines if the evidence is legally adequate to support the agency's factual findings.[68] It also determines if the Board made any errors of law.

On appeal "[t]he Superior Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[69] The Superior Court may not overturn a factual finding of the Industrial Accident Board unless there is "no satisfactory proof" supporting the Board's finding.[70] It is also well established that "[t]he credibility of the witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine."[71]

[66] *Oceanport Ind. v. Wilmington Stevedores*, 636 A.2d 892, 899 (Del. 1994); *Battisa v. Chrysler Corp.*, 517 A.2d 295, 297 (Del. Super. 1986), *app. dism.*, 515 A.2d 397 (Del. 1986).
[67] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).
[68] 29 *Del. C.* § 10142(d).
[69] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[70] *Id.* at 67.
[71] *Coleman v. Department of Labor*, 288 A.2d 285, 287 (Del. 1972).

# ANALYSIS

## A. BOARD'S DECISION IN ALLOWING MEDICAL RECORDS INTO EVIDENCE

Claimant and the Employer provide different interpretations of the same case law provided in *Lopez* and *Parke*. Essentially, Claimant argues that the Board in *Lopez* looks at fault and weighs the fault and harm to the respective parties. Because neither Claimant and Employer are at fault, it would be unfair and prejudicial to allow Claimant's pre-existing medical reports into evidence for Employer's expert to review and testify on when Claimant's expert did not receive the same opportunity to do so. Employer argues that Claimant is at fault because it is not the Employer's duty to obtain medical records for Claimant. Claimant has the burden to prepare her own expert and her case.

Claimant argues that although the Court in *Parke* held that Claimant could not be surprised by her own medical records, Claimant was not surprised by the existence of her medical records but rather Claimant was surprised by the contents contained within those records. Employer argues that none of that matters because the medical records were Claimant's own medical records to which Claimant had easy access. Thus, Claimant cannot claim that she was surprised by her own medical records.

In *Lopez*, the Board recognized that there are Board Rules that state that pre-trial memoranda may be amended or modified by the parties at any time prior to thirty days before the hearing, also known as the "Thirty-Day Rule."[72] The Board recognized that these Board Rules do not mention certain items.[73] Nonetheless, the Board also noted that it has long been held that a party does have a duty to produce reports in a timely fashion such that "fundamental principles of justice and fairness still apply."[74] The Board held that "a late-produced report can be stricken . . . if the delayed production results in undue prejudice or unfair surprise."[75]

Dr. Ivins produced Claimant's pre-existing medical records late, violating the Thirty-Day Rule by producing the report on January 16, 2023, four days before the scheduled hearing. However, Dr. Ivins medical records cannot be considered to be an unfair surprise for the Claimant. The *Parke* Court discussed "unfair surprise." The Court ruled that Parke's 1993 MRI was not obtained surreptitiously.[76] Having participated in the 1993 MRI, Parke should have been aware of the MRI.[77]

---

[72] *Lopez v. Method Hospitality PB, Inc.*, IAB Hearing No. 1532370 at *2 (July 6, 2023).
[73] *Id.* at 3.
[74] *Id.*
[75] *Id.*
[76] *Parke v. Sunrise Assisted Living, Inc.*, 2005 WL 268044 at *3 (Del. Super. Ct. 2005), *aff'd*, 878 A.2d 461 (Del. 2005).
[77] *Id.*

The Court finds that the same logic applies in this case. Dr. Ivins medical reports of Claimant were not obtained surreptitiously. Claimant admits that Employer gave notice to Claimant once Employer received the medical records from Dr. Ivins.[78] Additionally, as in *Parke*, Claimant should have been aware of her own medical records.

## B. BOARD'S DECISION TO DENY CLAIMANT'S PETITION TO DETERMINE COMPENSATION

The Board's decision to deny Claimant's Petition for Compensation Due turned on Claimant's credibility. First, there is conflicting testimony between the Claimant and Claimant's manager and the adjuster regarding when the accident happened. Claimant testifies that she experienced the work injury on September 23, 2020. However, the first report of injury date was on November 5, 2020 and Claimant's manager was unaware of Claimant's injury until November of 2020. Claimant fails to explain this discrepancy. Additionally, the initial medical records from Drs. Ivins, Galinat, and Rowlands after the alleged September 23, 2020 work accident did not document a work accident or injury. The records were changed to include a reference to the work accident, but the changes were not dated. None of the doctors were available to testify on the circumstances resulting in the changes.

---

[78] Employee-Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decision at 5.

The Board found it concerning that Claimant had many discrepancies that were not explained. The Board's decision was supported by substantial evidence and clearly stated the reasons why Claimant's testimony did not seem credible.

## CONCLUSION

The Board's January 19, 2023 decision found that the Employer was not at fault. The Employer obtained the medical records and timely produced those documents. It is up to the Claimant, not the Employer, to make sure she has the documents necessary for her expert and her case.

The Board's January 20, 2023 decision on Claimant's Petition to Determine Compensation found Claimant not credible. It is the exclusive function of the Board to address the credibility of witnesses. The Board supported its decision with objective evidence.

Claimant had the burden of proving that an accident occurred and that she is entitled to the claimed disability and medical benefits. Claimant failed to meet her burden to the satisfaction of the Board. The Court will not substitute its judgment for that of an administrative body where there is substantial evidence to support the decision.[79] The Board based their opinion upon its evaluation of Claimant's credibility and on medical records. This Court must take "due account of the

---

[79] *Olney v. Cooch*, 425 A.2d 610, 613 (Del. 1981).

18

experience and specialized competence" of the Board and of the purposes of the Workers' Compensation Act.[80]

Therefore, the January 19, 2023 and January 20, 2023 decisions of the Industrial Accident Board are hereby **AFFIRMED**.

**IT IS SO ORDERED.**

*/s/ The Honorable Mary M. Johnston*
The Honorable Mary M. Johnston

---

[80] 29 *Del. C.* § 10142(d).